(No. 41319.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JAMES STEPHEN PARKS, Appellant.

*Opinion filed April 1, 1971.—Rehearing denied May 26, 1971.*

JAMES M. SAMMONS, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and WILLIAM V. HOPF, State's Attorney, of Wheaton, (JAMES B. ZAGEL, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Du Page County, defendant James Stephen Parks was found guilty of the crime of obtaining dangerous drugs by fraud and sentenced to the State Farm at Vandalia for a term of one year. He raises several constitutional questions on this direct appeal from that judgment.

Bernard Lisitza is a pharmacist and owner of a prescription pharmacy in Itasca. About 8:30 P.M. on September 15, 1967, while he was waiting on a customer, Lisitza's wife accepted a telephone call. She told him it was a doctor who wanted to give him a prescription and he told her to have the caller wait. After a few minutes Lisitza went to the telephone, apologized for the delay, and contrary to his normal experience after keeping a doctor waiting, found the caller pleasant and patient. The caller identified himself as a doctor at a downtown Chicago address and told Lisitza to give Nancy Peterson, whose address is 310 North Willow, "Desbutal, 15 milligrams, No. 30." Lisitza's suspicion about the prescription was based on the caller's politeness after being detained and on the fact that "a doctor all the way in Chicago was prescribing a diet pill to be taken tomorrow

morning when he could easily have gotten her the prescription before."

Lisitza said he had received this type of call for this medication before and that when he asked many questions, no one came to get the prescription. On this occasion he did not ask for any more information than the caller's address. After concluding the telephone conversation, he tried to call Nancy Peterson to verify the transaction, but found the Petersons had an unlisted telephone number. He then checked his customer list and did not find a Nancy Peterson.

He realized that his employee, John Benneboese, lived across the street from the address given for Nancy Peterson and asked him if he knew her. Benneboese said he baby-sits for Mrs. Peterson and there is no Nancy Peterson. At this point, Lisitza called the police and talked with the chief. He told him that he was suspicious of a prescription that had been given to him, related the various factors on which he based his suspicion and asked that the police be on alert in case someone came for the prescription.

In a few minutes defendant arrived and asked for the Nancy Peterson prescription, and Lisitza said, "Well, Mr. Peterson it will be ready in just one minute." He then went to Benneboese and asked if he recognized defendant. Benneboese said "no" and Lisitza delayed defendant by writing a receipt while Benneboese called the police. He talked with the chief, told him who he was and said that a person had come for the prescription Lisitza had called about earlier. The chief said he was sending some officers.

Officers McCann and Grant arrived at the pharmacy just as defendant was about to leave. They approached Lisitza and said "Where is this fellow?" He pointed to defendant who was just walking out the door. The police officers stopped him outside the front door. Officer Militell arrived at this time in response to a call on his police-car radio. He asked defendant if he had made a purchase at the drugstore and for whom. Defendant said he had made a purchase for

his aunt, Nancy Peterson, who lived at 310 North Willow. Militell then asked his name and defendant said James Parks.

Officer Militell noticed defendant had an envelope in his hand. It was multi-colored and had on it the name of the pharmacy, the name of Nancy Peterson, the address 310 Willow and the amount of the purchase. The officer looked in the envelope, saw a vial of pills, and went into the pharmacy to confirm that defendant was the person who made the purchase. Defendant was then taken to the police station in a squad car. At the police station and after he was given the *Miranda* warnings, he made an incriminating statement which was introduced at his trial.

It is first argued that defendant was denied equal protection of the laws because he was tried and convicted under section 45.1 of the Uniform Drug, Device and Cosmetic Act (Ill. Rev. Stat. 1965, ch. 111½, par. 445.1) rather than section 45 of that Act. (Ch. 111½, par. 445.) (This act was repealed effective January 1, 1968, Laws of 1967, pp. 959, 984.) Section 45 prohibited the forging or altering of a prescription for a dangerous drug and provided a penalty of a $100-to-$500 fine for the first offense. Section 45.1 prohibited the procurement of a dangerous drug by various fraudulent methods including "the use of a false name or the giving of a false address" and provided a penalty for the first offense of a $100-to-$1,000 fine, imprisonment other than in the penitentiary for not more than 1 year, or both. Defendant asserts that section 45 covers the conduct with which he was charged and carries a maximum penalty of a $500 fine and that he was denied equal protection of the law by the application of section 45.1 which prohibited the same conduct but permitted the imposition of the 1-year sentence he received.

We note initially, without setting out the two sections in full, that they cover different types of conduct, although under some circumstances there might be some overlap. As-

suming, *arguendo,* that defendant's conduct may have been prohibited by section 45, his conduct was specifically prohibited under 45.1 and the proof required for each offense was different. The Supreme Court has stated: "Where Congress by more than one statute proscribes a private course of conduct, the Government may choose to invoke either applicable law: 'At least where different proof is required for each offense, a single act or transaction may violate more than one criminal statute.' " (*Rosenberg* v. *United States,* 346 U.S. 273, 294, 97 L. Ed. 1607, 1619, 73 S. Ct. 1152, 1163.) Our holding is to the same effect. (*People* v. *Crane,* 356 Ill. 276, 281.) Defendant's trial and conviction under section 45.1 did not deny him equal protection of the law.

Defendant next argues that the police obtained the pills as a result of an illegal search and seizure. This argument is based on his assertion that officer Militell did not have reasonable grounds upon which to make an arrest at the time he made the search and seizure. We do not agree.

When Lisitza, a reliable informant, called the police to alert them that someone was attempting to obtain a dangerous drug by fraud and related the circumstances indicating the crime was being committed, the police had reasonable grounds to make an arrest. The only question at this point was the identity of the person committing the crime. The second call told the police the person committing the crime was at the pharmacy. Lisitza identified defendant to the first two policemen to arrive. About this time officer Militell arrived and took charge of the situation. It is true, as defendant points out, that Lisitza did not inform Militell, prior to the search and seizure, of the circumstances indicating a crime was being committed or identify defendant to Militell as the person committing the crime. However, Militell was justified in acting on the information that had been given to the police chief and the identification that had been made

to his two fellow officers. *People* v. *Brinn,* 32 Ill.2d 232, 242; *People* v. *Peak,* 29 Ill.2d 343, 349.

Defendant has leveled several attacks on the admissibility of the statement he made at the drugstore and the one he made at the police station. He first argues that the statement he made in front of the drugstore is not admissible because he had not been given the *Miranda* warnings. It is not disputed that officer Militell asked defendant if he had made a purchase at the pharmacy, for whom he made the purchase and his name and that the *Miranda* warnings had not been given at this time.

*Miranda* warnings are not, of course, necessary where the police conduct a general on-the-scene questioning as to facts surrounding a crime. (*Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *People* v. *Tate,* 45 Ill.2d 540.) In *Lowe* v. *United States* (9th cir. 1969), 407 F.2d 1391, the court reviewed opinions of the United States Courts of Appeals and of the appellate courts of various States which illustrate the range of inquiries that come within permissible "on-the-scene questioning." It is sufficient for this case to state, without further discussion or analysis of those cases, that the inquiries officer Militell made, and the circumstances under which he made them, come well within the scope of permissible "general on-the-scene questioning."

In view of our holding that the first statement was not unlawfully obtained, defendant's argument that the second statement was the product of the first statement is without significance.

Defendant also contends he was not adequately warned of his right to counsel before making the second statement, and argues that the uncorroborated testimony of a single police officer, as to the explanation of rights that was given and the waiver of those rights by defendant prior to in-custody questioning, is not sufficient to show a knowing and

intelligent waiver by defendant of his privilege against self-incrimination and his right to retained or appointed counsel. Officer Militell's testimony shows substantial compliance with the requirements of *Miranda,* he was cross-examined with respect to the matter and the trial court, apparently, found his statement to be truthful. Under the circumstances the People sustained their burden of proving a knowing and intelligent waiver. See *Foreman* v. *State* (Fla. App. 1968), 213 So. 2d 754; *State* v. *Briggs,* 81 N.M. App. 581 (1970), 469 P.2d 730; *State* v. *Givens,* 252 Ore. 477 (1969), 449 P.2d 151.

Defendant's final argument is that he was not proved guilty beyond a reasonable doubt. Officer Militell testified that after defendant was taken to the police station he attempted to verify defendant's story. The officer tried to call Mrs. Peterson but discovered she had an unlisted number. He then sent a police car to her home with a request that she call him. After he talked with her, he advised defendant of his rights. He then telephoned the State's Attorney and consulted with him about the charge to be made against defendant. While he was preparing the warrant and complaint, he asked defendant how he got Mrs. Peterson's name and address. Defendant said his method of operation was to drive along a street until a name on a driveway marker or mailbox was found. In this case he found a driveway marker with the name Peterson and the 310 address. A telephone call would then be made to the drugstore and someone would get the prescription that had been called in.

We are of the opinion that the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt. We find no reversible error and the judgment of the circuit court of Du Page County is accordingly affirmed.

*Judgment affirmed.*