THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY A. SCHULD, Defendant-Appellant.
Second District   No. 2—87—0665

Opinion filed October 5, 1988.

Madsen, Baudin, Stolfi & Sugden, of Crystal Lake (W. Randal Baudin, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Jeffrey A. Schuld, driving a friend's pickup truck on Lake Street near Rodenburg Road in Roselle and accompanied by a sleeping passenger, Kenneth Kennedy, at 4:30 a.m., struck a Commonwealth Edison power pole which was located approximately eight feet off the side of the road. As a result of the impact, the windshield in front of the defendant was "spider-webbed" and he received a cut on his upper lip. The windshield in front of Kennedy was broken; he received a cut on his chin and was knocked unconscious. The defendant subsequently was charged, in the circuit court of Du Page County, with driving while under the influence of alcohol, driving with a breath-alcohol concentration in excess of .10, improper lane usage, and driving without wearing a seat belt.

He was convicted by a jury of driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11–501(a)(2)) but was acquitted on the charge of driving with a breath-alcohol concentration in excess of .10 (Ill. Rev. Stat. 1985, ch. 95½, par. 11–501(a)(1)). The other two charges were nolle prossed before trial. Defendant's post-trial motions to vacate the judgment and for a new trial were denied.

The defendant raises these issues:

1. Whether the State proved he was intoxicated at the time he was driving.

2. Whether he was denied a fair trial where a juror failed to disclose during *voir dire* that her son had become intoxicated and committed suicide.

3. Whether he was deprived of his right to due process and a fair trial because the court refused to grant a continuance of the trial.

4. Whether he should have been advised of his *Miranda* rights prior to answering any questions at the scene of the accident.

5. Whether the jury's verdicts are legally inconsistent.

6. Whether the court erred when it refused to vacate its order denying a rescission of the statutory summary suspension of his driver's license.

Officer Lee testified that on September 6, 1986, at about 4:40 a.m., he responded to the scene of an accident on Lake Street near Rodenburg Road. He arrived at the scene two to four minutes after he was dispatched. He saw a pickup truck partially off the roadway with damage to its right front area and the windshield on both the driver's and passenger's sides. There was a broken-off power pole near the pickup truck, along with glass and plastic debris from the pickup truck. There were wood splinters in the damaged area of the truck. There were no skid marks and no obstructions in the road, but there were tire rotation marks leading from the collapsed, damaged right front wheel to the resting point of the vehicle. The right rear tire was flat, and it had scuff marks on the inner side wall indicating after-accident deflation caused by rotation of the vehicle. There was a person in the passenger seat of the pickup; another person, identified as the defendant, was standing outside the vehicle attending to the passenger. Officer Lee asked the defendant if he was okay, and the defendant replied that he was, but that he was worried about his passenger. There was a small cut on the defendant's upper lip, and the officer brushed glass splinters from the defendant's hair. The officer was within one foot of the defendant when he smelled a strong odor of alcohol on the defendant's breath and noticed that his speech was slurred. Officer Lee asked the defendant who the driver was. Defendant replied, "I was."

Officer Lee then asked the defendant to perform a series of field sobriety tests, the second being a finger-to-nose test. After instructing the defendant and demonstrating to him the manner in which the test was to be completed, the defendant failed to touch the tip of his

nose with either his right or left index finger, but, rather, touched underneath his nose and his lip. The defendant was then requested to complete a one-legged stand test. Again, Officer Lee instructed the defendant how to perform the test and the defendant responded affirmatively that he understood. While performing this test, Officer Lee observed the defendant sway and use his arms to balance himself. Twice during this 30-second test, the defendant placed his foot on the ground. Finally, Officer Lee instructed the defendant how to perform a walk-and-turn test on a straight line. Twice during this test the defendant stepped off the fog line on the road to which he was supposed to be adhering. The defendant swayed and used his arms for balance.

Following these tests, the defendant was placed under arrest for driving under the influence of alcohol and taken to the Roselle police station. There, the defendant submitted to a breath test after the mandatory 20-minute waiting period, during which time he was closely observed. The defendant's breath-alcohol concentration was measured as .13 by the Intoxilyzer 5000 machine. The defendant was placed under arrest for driving under the influence of alcohol, and, after reading the defendant the *Miranda* warnings, Officer Lee asked him if he had been drinking. The defendant responded that he had been drinking beer. Officer Lee also asked the defendant if he was driving the vehicle that struck the utility pole, and the defendant answered in the affirmative.

The defendant's motion for a directed verdict at the close of the State's evidence was denied. Defendant then called two eyewitnesses, Lisa Patano and Deanna Corrado.

Patano, accompanied by Corrado, was driving in the same lane and behind the defendant's pickup truck for about the distance of one-half mile. She did not notice anything irregular about the pickup truck until, at one point, the pickup truck seemed like it went out of control, left the roadway, and struck the power pole. She and Corrado pulled over and got out. The defendant walked toward Patano and asked her to call the police and for some Kleenex. Patano called the police on her citizens' band radio and gave the defendant a paper towel, which he put on the wound on his mouth. Patano testified it was about 20 minutes before any police officers arrived at the scene. Patano did not know the defendant before the accident, but, based on her experience with approximately 50 other intoxicated persons, it was her opinion he was not intoxicated because he was not stumbling, he did not smell, his eyes were not red and he was very alert.

Corrado testified similarly that she did not notice anything about

the pickup truck until it hit the power pole. About 15 to 20 minutes passed before the police arrived at the scene. It was her opinion, based on her experience with about 25 other intoxicated persons, that the defendant was not intoxicated because he was not talking or walking "funny," she did not smell alcohol on his breath, and he seemed to be "totally aware" of what was going on.

The defendant then presented a forensic consultant, Gil Sapir, who testified concerning the operation of the breathalyzer equipment.

Kenneth Kennedy, the defendant's passenger, testified next. He testified he and the defendant were at three establishments beginning at approximately 10:30 p.m. on September 5. Kennedy did not notice if the defendant was drinking at the first place. He believed the defendant had one beer at the second place and nothing alcoholic at the third place because the defendant stated he was tired. Kennedy did not believe the defendant was under the influence of alcohol. Kennedy testified he fell asleep while riding in the truck with the defendant after they left the third place. He had no knowledge of the accident; when he woke up he was in the hospital. He could not account for how the defendant struck the power pole.

The defendant then testified. He admitted he had four beers at the first establishment where he and Kennedy were, and he had two more beers at the second place. He testified he did not have any beer at the third place. When he and Kennedy left there about 2:15 a.m., their plans were to follow some other people into Hoffman Estates where the defendant felt they would spend the night. Part of the way through the trip, he noticed Kennedy had fallen asleep, and he himself was feeling tired because he had only two hours sleep Thursday night. He decided to return to Crystal Lake, and on the way, he fell asleep. When the pickup truck went off the road onto the gravel, it awakened him, and he tried to correct his position, but struck the power pole on the passenger side of the truck. He did not feel he was under the influence of alcohol.

It was about 20 minutes before the police arrived at the scene and two minutes more before Lee arrived. Lee asked if everybody was all right and asked who was driving. Defendant admitted he was and gave Lee his driver's license. He then performed several tests: 9-steps-and-turn, index-finger-to-nose, recitation of the alphabet, and a one-legged stand. He admitted he may have moved a little fast on the steps and stepped too far in front of his foot, but he did not deviate from the fog line, and, although he did not pivot as the officer had instructed him, he did a "military turn." He did not recall if he used his arms for balance. When he did the finger-to-nose test, he did not

touch the tip of his nose because it was sore from the accident. He touched underneath his nose. When he recited the alphabet, he did the best he could with his lip bleeding. If his speech was slurred, it was because his lip was beginning to swell. When he did the one-legged stand, there was a lot of movement around him and when he looked back to see what was going on, he put his foot down once.

After the tests, Officer Lee told him to have a seat in the back of the squad car, and shortly thereafter they proceeded to the Roselle police department, where he took a breathalyzer test. He did not feel Officer Lee watched him for 20 minutes before he took the breathalyzer test. After the test reading of .13, he was placed under arrest for driving under the influence of alcohol.

The defendant's first contention is that the State failed to prove the *corpus delicti* of the offense, *i.e.*, that he was intoxicated at the time he was driving the pickup truck. He argues the State's evidence by way of Officer Lee's testimony established only that he was intoxicated at the time of his arrest, not at the time he was driving the pickup truck.

The defendant's argument focuses solely on the extent of Officer Lee's testimony. This view of the evidence is due to the defendant's position that the court erred by not directing a verdict in his favor at the close of the State's evidence. However, as the State points out, defendant proceeded to present his case after the court denied the motion, and the introduction of this evidence thereby waived any appeal of the denial of his motion for a directed verdict. (*People v. Taglia* (1979), 76 Ill. App. 3d 199.) Waiver of the appeal has not been favored, however, where the substance of the defendant's argument is that the court erred in failing to vacate the verdict or grant a new trial. (*People v. Johnson* (1984), 123 Ill. App. 3d 363, 369.) Accordingly, we will consider all of the evidence presented at trial in deciding the issue and we will reverse only if the evidence is so unreasonable, improbable or unsatisfactory as to justify reasonable doubt of the defendant's guilt. *People v. Borst* (1987), 162 Ill. App. 3d 830, 835-36.

In *People v. Frye* (1983), 113 Ill. App. 3d 853, 858, it was stated:

"It has long been established in this State that '[o]bservation of the defendant in the act of driving is not an indispensable prerequisite to conviction of driving while intoxicated, provided the act of driving while intoxicated is established by other credible and substantial evidence, either direct or circumstantial.' *People v. Toler* (1975), 32 Ill. App. 3d 793, 799, 336 N.E.2d 270, 275; see also *People v. Younge* (1980), 83 Ill. App. 3d 305,

404 N.E.2d 415; *People v. Garnier* (1959), 20 Ill. App. 2d 492, 156 N.E.2d 613."

(See also *People v. Foster* (1985), 138 Ill. App. 3d 44.) Contrary to the defendant's argument, there is substantial direct and circumstantial evidence that he drove the pickup truck while intoxicated.

■ Although the *corpus delicti* of a charged offense cannot be proved by the defendant's admission alone (*People v. Foster* (1985), 138 Ill. App. 3d 44), the fact that the defendant was the driver of the vehicle was corroborated by the testimony of witnesses Patano, Corrado and Kennedy. The fact the defendant was intoxicated at the time he drove the vehicle was established by circumstantial evidence. Such evidence may be used to prove the *corpus delicti*. (*People v. Drake* (1985), 131 Ill. App. 3d 466.) The defendant here was shown to have been driving the pickup truck when it struck the power pole at approximately 4:30 a.m. Ten to twenty minutes later, Officer Lee observed the defendant to be speaking with slurred speech and his breath to have a strong odor of alcohol. He administered field sobriety tests to the defendant and, based on the defendant's unsatisfactory performance of those tests, placed him under arrest for driving under the influence of alcohol. A breathalyzer test conducted at 5:30 a.m., approximately one hour after the defendant was proved to have been driving the pickup truck, measured his breath-alcohol concentration as .13. A blood- or breath-alcohol concentration of .10 raises the presumption that the person was under the influence of alcohol. Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b)(3).

In light of this circumstantial evidence, we conclude the State proved the *corpus delicti* of the offense charged beyond a reasonable doubt. (*Cf. People v. Kappas* (1983), 120 Ill. App. 3d 123 (where defendant admitted having three beers and his blood-alcohol concentration was .1170 38 minutes after he was arrested for his car weaving out of his lane of traffic, the jury could reasonably conclude his blood-alcohol concentration was .10 or higher at the time he was driving).) The opinion testimony of Patano and Corrado that the defendant was not intoxicated presented a question of credibility which was in the province of the trier of fact to resolve. In sum, no reversal is warranted.

■ Defendant next contends he was denied a fair trial because a juror whose son became intoxicated and committed suicide failed to reveal this information in response to several general questions on *voir dire* such as, *e.g.*, "[I]s there some question that you're dying that Judge Mehling [would have] asked you or I [would have] asked you or the Prosecution [would have] asked you that would assist us in

determining if we have got an impartial jury here?" and, "If you were in my position as the attorney for Mr. Schuld, would you want someone with your particular frame of reference, knowledge, demeanor, sitting in a position where you are now?"

The information about the juror's background was acquired during post-trial interviews with some of the jurors who indicated that this particular juror was "one of the most vehement advocates for conviction in this case." Defendant asserts the court's denial of his motion in arrest of judgment and for new trial on this basis was error. We disagree.

Although it is indisputable that a fair trial requires participation of impartial jurors (*Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639), a juror's failure to reveal potentially prejudicial information during *voir dire* does not automatically entitle defendant to a new trial. (*People v. Hunt* (1983), 112 Ill. App. 3d 138.) The burden is on the defendant on a motion for a new trial to establish the prejudice or bias of a juror (*People v. Porter* (1986), 111 Ill. 2d 386; *People v. Davenport* (1985), 133 Ill. App. 3d 553), and it is incumbent on the movant to introduce or offer distinct evidence of juror partiality by affidavit or juror testimony. (*People v. Witte* (1983), 115 Ill. App. 3d 20.) The decision whether to grant a new trial rests in the sound discretion of the trial court, the exercise of which will not be disturbed except for clear abuse. (*Hunt*, 112 Ill. App. 3d at 141.) The general rule is that a motion for a new trial will not be granted unless it is established that actual prejudice resulted. *Porter*, 111 Ill. 2d at 403.

■ The defendant here not only failed to identify which juror possessed this allegedly disqualifying background but failed to identify exactly how, or if, this experience prejudiced the juror against the defendant. No affidavits or juror testimony were offered with the defendant's motions, and the fact this juror was vehemently in favor of the defendant's conviction could be attributable to the strength of the evidence against him.

The court did not err in denying defendant's motion in arrest of judgment or for a new trial.

■ Defendant's next contention is that the trial court's desire to expedite the trial deprived him of his right to due process and a fair trial. Pointing to numerous passages in the record which allegedly demonstrate that the court's utmost concern here was with the dispatch of the proceedings to the exclusion of fairness, he seeks a new trial. In support, he cites *United States v. McLain* (11th Cir. 1987), 823 F.2d 1457.

The instant cause clearly cannot be compared with the circumstances in *McLain*. There, the court found the defendants were entitled to a new trial where, in addition to prosecutorial misconduct, the court's desire for dispatch of the case for which she had allotted eight weeks' time (200 hours) led her to order proceedings to commence each day at 7:30 a.m. and conclude at 5 p.m. Monday through Thursday. This schedule continued from December 3, 1984, through January 29, 1985. The judge constantly reminded the attorneys to pick up the pace, had them clocked by the courtroom deputy clerk, and periodically advised them how much time each attorney had used. This rigorous schedule took a toll on the effectiveness of the jury and its ability to concentrate on the trial. The jurors became restless and inattentive, they slept—one juror ultimately was dismissed for sleeping—and were allowed to eat in the jury box. Eventually, jurors and witnesses were allowed to stand while the attorneys conducted their examinations. The rigorous schedule also took a toll on the attorneys' ability to stay alert and provide adequate representation where, in addition to the severe daily court schedule, they often worked until midnight preparing for the next day, and one of the defense attorneys moved to withdraw, citing exhaustion as the major factor.

Here, defendant's trial commenced at approximately 1:30 p.m. on Thursday, March 5, 1987, and concluded for that day at about 8 p.m. Trial recommenced on Friday, March 6, at 1:30 p.m. At approximately 5:30 p.m., defense counsel requested a sidebar to bring "the hour of the day" to the court's attention, stating his objection that: "I personally have been up since 5:30 this morning. And I would just for the record indicate I don't think it's fair to my client, to me, to the abilities that I have or don't have, to the jury, to the court personnel to [be] proceeding on a Friday at 5:30 when the courthouse closed at 4:30."

Inasmuch as the court had advised the jury the trial would begin on Thursday and finish up on Friday, the court advised counsel: "[W]e will make that attempt to finish it today. And I did tell [the jury] yesterday that we would go into the evening hours. And I think I was clear to everybody." Another reason the trial judge desired the trial to conclude as scheduled was that he was scheduled to leave for a week-long judges' seminar on Sunday, March 8.

The record indicates that at the conclusion of the evidence, the judge advised the jury that, "[b]ailiff will take your order for dinner and then after final argument, you'll have a dinner on the county before you decide this case." The jury began its deliberations at 9 p.m. and, after an initial indication at 10:45 p.m. that it might not be able

to reach a verdict that night, returned its verdicts at 12:15 a.m. on Saturday, March 7. The 3¼-hour deliberation time included the jury's one-hour dinner break.

It is clear the court's objective here was to conclude the defendant's trial as planned. The facts simply do not support a conclusion that the court exalted dispatch over fairness or that long hours so reduced counsel's and the jury's effectiveness that he was deprived of a fair trial.

A court is given considerable latitude in the orderly procedure of a trial, and the exercise of that discretion will not be disturbed unless a clear abuse is shown. (*People v. Garrett* (1973), 11 Ill. App. 3d 142.) Although defense counsel may have been exhausted as he represented to the judge, he does not argue here that his exhaustion caused him to render less than effective assistance to the defendant nor does the record reveal any deficiency in counsel's representation. Further, despite defendant's assertion one of the jurors fell asleep during trial and the fact he raised this point in his post-trial motion, the record does not show this matter was brought to the court's attention during trial, which was counsel's duty. (*People v. Silagy* (1984), 101 Ill. 2d 147.) Further, aside from the jury foreman's comment that he did not think a verdict would be reached that night, there was no indication the jury was so fatigued that it could not continue, and, in fact, it did reach a verdict approximately 1½ hours after the foreman made his comment.

There was no abuse of the court's discretion in seeking to conclude defendant's trial as scheduled nor was defendant denied due process or a fair trial.

■ Defendant next contends his fifth amendment privilege against self-incrimination was violated when Officer Lee did not advise him of his *Miranda* rights before asking the question, "Who was driving?" Defendant argues Officer Lee's investigation "focused" on him as the target of the driving while under the influence charge when Officer Lee smelled the "strong odor" of alcohol on his breath.

Defendant's contention is without merit. It has been held that if a defendant takes the witness stand and admits in substance matters contained in a confession or statement he has given the police, this testimony will be considered to have waived or made harmless any error that may have occurred in the admission of the confession or statement. (*People v. Auilar* (1974), 59 Ill. 2d 95.) Defendant here did exactly that, admitting on the stand that he was driving the pickup truck. Moreover, defendant's statement to Officer Lee, given after he had been advised of his *Miranda* rights at the police station, also was

admitted at trial and defendant therein stated he was the driver of the pickup. Consequently, any error which may have been committed in the admission of his oral statement to Officer Lee was thereby waived or rendered harmless.

It is well established that *Miranda* warnings must be given prior to any in-custody interrogation (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) but that *Miranda* warnings are not required prior to general on-the-scene questioning by police who are investigating the scene (*People v. Parks* (1971), 48 Ill. 2d 232).

Under similar circumstances in *People v. Nunes* (1986), 143 Ill. App. 3d 1072, this court found that a statement made by the defendant driver that she had had eight drinks—which was made at the scene and before her arrest after the officer detected "a strong odor of alcohol" and observed that her eyes were "bloodshot and glassy"— was admissible. This court relied on *Berkemer v. McCarty* (1984), 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138, wherein the Supreme Court held that a driver stopped for a traffic violation is not in custody unless and until he is actually arrested. Defendant here was not actually arrested until he performed poorly on the field sobriety tests.

Defendant's fifth amendment right against self-incrimination was not infringed.

■ Defendant's contention that the jury's verdicts finding him guilty of the offense of driving while under the influence of alcohol but not guilty of the offense of driving with a breath-alcohol concentration in excess of .10 are legally inconsistent is without merit. This court recently rejected the identical contention in *People v. Foley* (1987), 152 Ill. App. 3d 354.

■ Defendant's final contention is also without merit. Defendant cites no authority in support of his argument in violation of Supreme Court Rule 341 (113 Ill. 2d R. 341(e)(7)) and, thus, the issue may be considered waived. *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255.

That aside, the defendant argues it was error for the court to refuse to vacate its previous order denying a rescission of the statutory summary suspension because the jury acquitted him on the charge of driving with a breath-alcohol concentration in excess of .10. We find no evidence in the record that the court denied defendant's motion; rather, it appears the court took the matter "under advisement" and continued the cause "for sentencing and decision on the possible rescission on the summary suspension." No further report of proceedings is provided, and the court's probation order does not mention the summary suspension. Accordingly, there is no support in

the record for the defendant's assertion the court denied the motion to vacate.

Assuming *arguendo* the court did refuse to vacate its order denying rescission, no error is apparent. As the State points out, statutory summary suspension of a person's driver's license under the provisions of section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1) is an administrative function of the Secretary of State which operates without regard to the resolution of the companion DUI case. (*People v. Meyer* (1988), 166 Ill. App. 3d 1030.) Further, in *People v. Gerke* (1988), 123 Ill. 2d 85, our supreme court held that section 11—501.1 does not permit the circuit court discretion to rescind a statutory summary suspension based solely on the disposition of the underlying criminal proceedings.

Assuming the court ruled on defendant's motion, it did not err in denying it.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.