THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES D. LASPISA, Defendant-Appellee.

Second District   No. 2—91—1034

Opinion filed April 28, 1993.

WOODWARD, J., dissenting.

James E. Ryan, State's Attorney, of Wheaton (Phillip Dolci, Assistant State's Attorney, and William L. Browers and Lisa Anne Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael Fleming, of Elmhurst, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

In a prosecution for the illegal possession of less than 30 grams of a substance containing cocaine, a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(a)(2)(A)), the State appeals an order suppressing statements made by defendant, James D. Laspisa, before and after he and three other individuals were arrested by officers of the Elmhurst police department. The trial court held that the arrest of the defendant and the search of the car in which he and the other three people were riding were proper. However, the court granted defendant's motion to suppress his statements on the ground that they were obtained without preliminary warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

On interlocutory appeal (134 Ill. 2d R. 604(a)) the State argues that the decision to suppress defendant's statements was manifestly erroneous. The State argues that (1) the police did not need to issue *Miranda* warnings for the general, on-the-scene questioning that led to the first set of statements; and (2) even if the statements defendant made after his car was stopped but before he was placed under arrest were improperly obtained, the statements defendant made at the police station were preceded by *Miranda* warnings and were admissible. We agree with the State that the trial court's suppression order was legally erroneous. We therefore reverse and remand the cause.

Julie Casiello, Jodi Scott, Robert Kalteux, and defendant were charged with the unlawful possession of a controlled substance. They filed motions to quash their arrests and to suppress evidence and statements. The motions were consolidated.

At the hearing on the motions, Elmhurst police officer Robert Nicholas testified that, on the evening of November 21, 1990, he and partner Dominic Panico were on patrol in an unmarked car. The officers were in plain clothes. At about 10:40 p.m., they drove down Emery Lane, a quiet residential street, where they observed a light tan, four-door Cadillac that was parked northbound along the curb. Four people were in the Cadillac. The officers parked about two houses down from the Cadillac. The area was well illuminated by streetlights, and the dome light was on inside the Cadillac.

Officer Nicholas exited his car, crossed the street, and observed the Cadillac from about 20 feet away. Nicholas' observations from across the street took about one minute. His view was unobstructed and he faced the driver's side of the car. Julie Casiello was the driver. James Laspisa, defendant, was in the front passenger seat. Robert Kalteux was behind Julie Casiello. Jodi Scott was behind defendant.

Officer Nicholas saw defendant looking around and ahead a few times, though never directly at Nicholas. Defendant was sitting erect with his head down toward his lap. After a few seconds, defendant pulled his head back and tilted it up. Defendant then reached over to Scott and handed her a book. She took the book, lowered it to her lap, put her head down, and moved her head back up again. Scott handed the book to Kalteux, who underwent similar motions several times, inhaling repeatedly. Officer Nicholas concluded that the three passengers were ingesting cocaine.

Officer Nicholas signaled Officer Panico to approach the Cadillac. As the officers did so, the dome light shut off, the exterior lights were activated, and the Cadillac went north on Emery Lane. The officers reentered their car and followed the Cadillac, which drove into a parking lot at Hurricanes, a lounge and night spot. The officers parked in a lot just east of Hurricanes.

After the two cars had parked, Officer Nicholas exited his car and approached the Cadillac. Defendant and Kalteux were exiting the car; the two women stayed inside. Officer Nicholas knew of no arrest warrant for any of the occupants of the Cadillac, and he did not seek consent to search the car. He went to Robert Kalteux, displayed his badge, and identified himself as a police officer. The officer did not display any weapon. Officer Nicholas told Kalteux that

it looked as though the occupants of the car had been snorting cocaine; he asked if they had cocaine. Kalteux said that they did and that he had ingested some. When Officer Nicholas asked where the cocaine was, Kalteux said that defendant had had it in a brown folder and that defendant may have put the folder into the glove compartment.

Officer Nicholas walked around to the passenger side of the car; Panico stood near Kalteux and defendant on the driver's side. While partly in the vehicle, Nicholas talked to Julie Casiello and Jodi Scott. At this time, Officer Nicholas had not displayed any weapon. None of the car's occupants had been handcuffed or told that they were under arrest. Officer Nicholas asked the women about the cocaine. They replied that they thought that either defendant Laspisa or Kalteux had had it and that it was in a black folder in the vehicle. Officer Nicholas looked into the glove compartment, then under the front passenger seat, from where he retrieved a black leather folder.

Officer Nicholas exited the Cadillac, stood outside the passenger door, and asked Robert Kalteux where the cocaine was. Kalteux's response was unintelligible; his words were slurred and he had a bulge in his cheek. Officer Panico then talked to Kalteux. A short time later, Officer Panico showed Officer Nicholas a clear plastic bag that Panico said he had removed from Robert Kalteux's mouth. Officer Nicholas concluded that the substance in the bag was cocaine. After he examined the bag, Officer Nicholas placed the four suspects under arrest. They were transported to the Elmhurst police station.

Officer Panico testified that, after the Cadillac parked at Hurricanes, he exited the police car shortly after Officer Nicholas and approached defendant Laspisa, who was standing outside the front passenger door. Officer Panico identified himself and showed defendant his badge, but he did not display any weapon. As Officer Panico spoke to defendant Laspisa, Robert Kalteux, at Officer Nicholas' request, exited the car. Officer Panico asked defendant why the four people had been parked in a residential area. As best the officer could recall, defendant replied that they "were just parked there."

Officer Panico never obtained consent to search the car. He never recovered any cocaine or drug paraphernalia from defendant. However, as he watched Officer Nicholas speak to Kalteux from the other side of the car, Officer Panico noticed that Kalteux's speech was impaired and "mush-mouthed" and that something was pro-

truding from Kalteux's cheek. When Officer Nicholas asked Kalteux if the latter had anything in his mouth, Kalteux began chewing. Officer Panico told Kalteux to spit out whatever Kalteux was chewing; when Kalteux refused, the officer took hold of him, Kalteux struggled to break free, Officer Panico attempted to handcuff Kalteux, and, as the two fell to the ground, Kalteux spat out the bag of cocaine. Officer Panico recovered the bag and handcuffed Kalteux.

Robert Kalteux testified that Officer Nicholas never sought or received permission to search the car. He admitted that, in response to Officer Nicholas' questioning, he told the officer that the group had cocaine and that, while the four had been parked on Emery Lane, Kalteux used some cocaine himself.

Jodi Scott testified that, on the evening of November 21, 1990, she and the other defendants decided to use cocaine. They chose Emery Lane because it was a secluded residential area where they were likely to escape notice. Because the four were trying to avoid detection, the dome light of the Cadillac was on very briefly if at all, and the headlights were turned off. However, the streetlighting in the area was bright enough to illuminate the cocaine. Scott could not recall whether the light from the driver's visor was on during that time.

Jodi Scott snorted cocaine twice while the car was parked; she got the cocaine from defendant. The group was parked at Emery Lane for two or three minutes at the most. They became nervous when they saw the headlights of the car that pulled up in back of them. They sat quietly while the other car was parked behind them. When the other car drove past and turned around in a driveway, Julie Casiello drove off to the parking lot at Hurricanes.

As the Cadillac entered the lot, Officer Nicholas, without identifying himself, tapped on a window and asked the occupants for identification. Jodi Scott showed him identification. Officer Nicholas told the women to stay seated as he searched the car. Officer Nicholas repeatedly asked, " 'where is it'?"

Julie Casiello testified that she and her three codefendants went to Emery Lane on the evening of November 21, 1990, because they wanted to avoid detection while using cocaine. She turned on a light inside the car for only a moment as one of the passengers pulled out the cocaine. Also, a reading light was on very briefly in the back of the car. As they were ingesting cocaine, they noticed the unmarked police car pull up in back of them. The four sat there nervously; when the other car pulled ahead of them and entered a

driveway, Casiello drove the Cadillac away and eventually stopped at the Hurricanes parking lot.

The court held that the stop and search of the Cadillac were proper, as the officers had probable cause to believe that the occupants possessed and had used cocaine. The court denied the motions to quash the arrests and to suppress the evidence.

However, the court granted the motions to suppress statements made to the police by defendant and the other occupants of the Cadillac. The court explained that, once the car had been stopped and the occupants had been told the reason for the stop, the police were required to admonish the four of their *Miranda* rights. As the officers had not done so, the court granted the motion to suppress any statements defendant or his three friends made before they were taken to the police station.

The court held a separate hearing on whether to suppress statements that the four defendants made at the police station. Officer Panico testified that, at about 1:50 a.m. on November 22, 1990, roughly three hours after the arrests, he talked to defendant in the interview room of the police station. No one else was present. Reading from a card, Officer Panico advised defendant of defendant's *Miranda* rights. He asked defendant if the latter understood; defendant said yes. Defendant appeared calm and collected, and Officer Panico made no threats or promises. Although defendant had been drinking, he was not intoxicated, and he answered the officer's questions clearly and concisely. Officer Panico and defendant were in the interview room for about 30 minutes. Panico asked defendant about the events that led to the arrests, including whether defendant had used any cocaine.

The trial court granted the motion to suppress the statements that defendant made to Panico at the station. The court held there was nothing to attenuate the taint that required suppression of the prearrest statements. The court denied the State's motion to reconsider, and the State timely appealed.

On appeal, the State argues that the suppression of both the prearrest and post-arrest statements was manifestly erroneous. The State asserts first that the trial court erred as a matter of law in holding that the police were required to give *Miranda* warnings before questioning defendant and his friends at the Hurricanes parking lot, as such warnings are necessary only before custodial interrogation and not before general, on-the-scene questioning. The State argues second that the suppression of defendant's post-arrest statements was erroneous because (1) there being no primary ille-

gality, the statements could not be tainted by previous illegality; and (2) even if the prearrest statements must be suppressed, defendant's post-arrest statements were voluntary and free of taint.

We will reverse a trial court's decision on a motion to dismiss only if that decision is manifestly erroneous. (*People v. Harper* (1992), 237 Ill. App. 3d 202, 205.) Here, we agree with the State that the trial court's suppression of defendant's statements was manifestly erroneous.

██ █ Although *Miranda* warnings are required for custodial interrogation, police need not give the warnings before asking questions in the course of general, on-the-scene investigation of a possible crime. (*Miranda*, 384 U.S. at 477-78, 16 L. Ed. 2d at 725, 86 S. Ct. at 1629-30; *People v. Parks* (1971), 48 Ill. 2d 232, 237, *cert. denied* (1972), 404 U.S. 1020, 30 L. Ed. 2d 669, 92 S. Ct. 692; *People v. Schuld* (1988), 175 Ill. App. 3d 272, 283.) Even viewing the evidence most favorably to defendant, we conclude that the questioning that led to his (and the other passengers') prearrest statements was on-the-scene investigation pursuant to which *Miranda* warnings are not required. Therefore, these statements should not have been suppressed.

The trial court upheld the search of the vehicle in which defendant was riding. The court found that, at the time of the stop and search, the police had probable cause to believe that defendant had recently committed a crime. The court also concluded that the police had probable cause to search the vehicle and the vicinity for evidence of that crime. It is undisputed that, when Officer Nicholas began to question the occupants of the car, he did not arrest them and did not display any weapon. Although he was accompanied by another officer and identified his office to the occupants of the car, the cases makes it clear that these factors in themselves did not turn the questioning in the parking lot into custodial interrogation.

In *Berkemer v. McCarty* (1984), 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138, a police officer, noticing that the respondent was driving erratically, stopped the respondent's car and ordered him out of the vehicle. The officer forced the respondent to perform field sobriety tests and asked the respondent if the latter had been drinking. When the respondent admitted to having consumed beer and marijuana shortly before the stop, the officer placed him under arrest. The Supreme Court held that the prearrest roadside questioning pursuant to a routine traffic stop did not require *Miranda* warnings. Acknowledging that "the aura of authority surrounding an armed, uniformed officer and the knowledge that the officer has

some discretion in deciding whether to issue a citation, in combination, exert some pressure on the detainee to respond to questions" (*Berkemer*, 468 U.S. at 438, 82 L. Ed. 2d at 333-34, 104 S. Ct. at 3149), the Court held nonetheless that such circumstances did not amount to "custodial interrogation." The Court stressed that the typical traffic stop is relatively brief and subject to public view and that the detained motorist is confronted by only one or two officers. *Berkemer*, 468 U.S. at 438-39, 82 L. Ed. 2d at 334, 104 S. Ct. at 3149-50.

In *Parks*, a pharmacist called the police because he suspected that someone was attempting to obtain drugs by a fraudulent prescription. The police arrived, stopped the defendant as he was walking out the door, and asked him if he had made a purchase and for whom he made the purchase. The defendant answered the questions and then, upon being asked, told the police his name. Later, the police arrested the defendant. The supreme court held that the statements the defendant made outside the drugstore were admissible, as they were the product of on-the-scene investigatory questioning, for which no *Miranda* warnings were needed. *Parks*, 48 Ill. 2d at 237.

In *People v. Pullum* (1974), 57 Ill. 2d 15, the defendant was stopped by two police officers at 2 a.m. for running a red light. He made several statements later used to help convict him of armed robbery. Although it reversed and remanded on other grounds, the supreme court held that these prearrest statements did not require *Miranda* warnings. *Pullum*, 57 Ill. 2d at 18.

In *People v. Acebo* (1989), 182 Ill. App. 3d 403, 405, a police officer frisked the defendant pursuant to a valid *Terry* stop. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The appellate court held that the defendant's statement, in response to on-the-scene questioning, that he was the driver of a truck involved in a nearby accident was admissible even though the officer gave no *Miranda* warnings until after the arrest. The facts in these cases were no more favorable to the prosecution than are the facts here.

We conclude that the trial court manifestly erred in suppressing defendant's prearrest statements. Also, the trial court erred in suppressing defendant's post-arrest statements. This ruling rested entirely on the premise that the post-arrest statements were the product of improper prearrest questioning. However, we have held that the prearrest questioning was proper. As there was no primary illegality, there can be no derivative illegality. Therefore, we need not

decide whether any taint was sufficiently attenuated by the warnings that defendant received once he was in custody.

The trial court's order suppressing defendant's statements is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

QUETSCH, J., concurs.

JUSTICE WOODWARD, dissenting:

I respectfully dissent. As the majority states, the trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous (*People v. Galvin* (1989), 127 Ill. 2d 153). Officer Nicholas testified that he was standing about 20 feet away from the Cadillac as it was parked on Emery Lane. From his unobstructed vantage point, he was able to see the defendants within the car. The vehicle's dome light was on. Nicholas described in detail the physical actions of defendants Laspisa, Scott and Kalteux. Each of them engaged in typical cocaine-taking behavior. For example, defendant sat with his head down toward his lap. Within seconds, he pulled his head up and then tilted his head backward. When the officers approached the Cadillac, the dome light was turned off, and defendants drove off to a local nightclub. The officers reentered their unmarked vehicle and followed the Cadillac, having determined, based on their experience, that the vehicle's occupants had been ingesting cocaine. While following the Cadillac, Nicholas and Panico attempted to get a squad car in the area to make a traffic stop.

After the Cadillac pulled into the Hurricane's lot, the officers turned into the parking lot directly east. They approached the car as defendant and Kalteux were getting out of it. Officer Nicholas displayed his badge and identified himself to Kalteux, and Officer Panico approached defendant and showed him his badge. Nicholas pointedly asked Kalteux if the car's occupants had been snorting cocaine. Panico asked defendant what they had been doing on Emery Lane.

At the initial hearing on defendant's motion to quash arrest and suppress evidence, the trial court stated:

"[T]he motor vehicle was properly stopped and a search of the motor vehicle was permissible under the circumstances. There was a sufficient basis in fact for probable cause that there was a controlled substance in the motor vehicle. Therefore, the motion to suppress the arrest and evidence seized is denied.

As to statements made, there being an admonishment that was required and not given, the statements are suppressed."

There is little question that the trial court surmised from the facts that defendants were going to be arrested for cocaine possession in the Hurricane's parking lot. This was not an investigatory situation in which the police had a suspicion that the defendants had committed a crime. From close range, Officer Nicholas had watched defendants ingest a substance which, based upon his extensive experience, he believed was cocaine. Nicholas unsuccessfully attempted to have a squad car pull the Cadillac over prior to its stopping in Hurricane's parking lot.

When the subject questions were posed to defendants, there is little doubt that their arrest was either imminent or had already commenced. Defendants were obviously not free to leave. The fact that the police had not drawn their weapons and had not told the four people they were under arrest is of little import here. A reasonable person in these circumstances would not have believed he was free to leave. It is disingenuous of the State to argue that the subject questions were merely a part of an on-the-scene investigation. Upon approaching the vehicle, the officers should have given the *Miranda* warnings to defendant.

The cases cited by the majority are factually distinguishable. The police officer in *Berkemer v. McCarty* (1984), 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138, had merely observed defendant driving erratically. Upon making a routine traffic stop, his questions to defendant were part of an on-the-scene investigation. The instant appeal does not involve a routine traffic stop; it resulted from police officers observing probable criminal acts. In *People v. Parks* (1971), 48 Ill. 2d 232, unlike this case, the police did not observe the alleged criminal behavior. *People v. Pullum* (1974), 57 Ill. 2d 15, is similar to *Berkemer* in that it dealt with a routine traffic stop. Finally, *People v. Acebo* (1989), 182 Ill. App. 3d 403, dealt with a valid *Terry* stop, which involved some on-the-scene questioning. The appeal at bar did not involve a *Terry* stop, as the circumstances here had progressed far beyond those meriting a *Terry* stop.

The facts support the trial court's conclusion that *Miranda* warnings should have been given to defendant prior to his questioning in the Hurricane's parking lot. Moreover, as the trial court found, because there is primary illegality, there is derivative illegality regarding defendant's statements in the police station. Accordingly, this court should affirm the trial court's order suppressing defendant's statements.