**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210371-U

Order filed August 3, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellant, | ) | |
| v. | ) ) ) | Appeal No. 3-21-0371 Circuit Nos. 20-DT-10, 20-TR-401, 20-TR-402 and 20-TR-403 |
| JOSHUA R. BEVANS, | ) ) | Honorable Dana Roy McReynolds, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Holdridge concurred in the judgment.
Justice McDade dissented.

**ORDER**

¶ 1    *Held*:  The circuit court erred in granting defendant's motion to suppress statements as defendant was not subject to a custodial interrogation requiring *Miranda* warnings.

¶ 2    The State appeals the Henry County circuit court's order suppressing statements made by defendant, Joshua R. Bevans. The State argues that the circuit court erred in granting defendant's motion to suppress statements because defendant was not subject to a custodial interrogation that would require the issuance of *Miranda* warnings. We reverse and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4          Following a traffic stop, defendant was charged with driving under the influence (625 ILCS 5/11-501(a)(2) (West 2020)), improper lane usage (*id.* § 11-709), and illegal transportation of alcohol (*id.* § 11-502). Defendant moved to suppress statements made during the investigation, arguing that he was subject to a custodial interrogation and should have been given his *Miranda* warnings. The State filed a response, arguing that *Miranda* warnings were not required because defendant was not in custody when the officer asked questions regarding the accident. The cause proceeded to a hearing on defendant's motion.

¶ 5          The evidence presented at the hearing revealed that on January 29, 2020, at approximately 10:45 p.m., Geneseo Police Officer Zach Thompson received a call from dispatch reporting a car accident and an individual walking away from the scene. Thompson observed that it was a cold night with snow on the ground. Thompson located the individual who was later identified as defendant on the side of the road, activated his emergency lights for safety, and turned on his body camera. Thompson was alone and announced that he was a police officer. Initially, Thompson wanted to determine whether defendant needed assistance and was connected to the car accident.

¶ 6          Defendant told Thompson that he needed a ride. Thompson asked if defendant wanted to get in his squad car to warm up. When Thompson informed defendant that he would need to pat him down for officer safety, defendant agreed to be searched. Defendant entered the squad car voluntarily to get out of the cold. During Thompson's initial interaction with defendant, he observed the odor of an alcoholic beverage emanating from defendant and defendant's speech was slow and slurred. After defendant entered the squad car's backseat, Thompson observed the odor of an alcoholic beverage emanating from the back of the squad car. Thompson told defendant that he could sit in the squad car while Thompson called his sergeant. Thompson informed defendant

that he was going to attempt to locate defendant's car. Defendant became upset and stated that he was going to exit the squad car. At that time, Thompson felt that defendant "was not free to leave" and told defendant he was not permitted to exit. Thompson located defendant's car in a ditch approximately a half of a mile from where he found defendant walking. Thompson indicated that when defendant was outside of the car, he was the subject of an investigation because Thompson "believed that he may have been driving the vehicle" that was being investigated for "a possible traffic accident." Defense counsel objected to the State's questions regarding the condition of the vehicle involved in the accident as irrelevant. The court sustained the objection, finding that "[t]he statements that are being sought to be suppressed here are the statements that [defendant] made prior to going up to the car."

¶ 7       The State admitted Thompson's body camera video into evidence. The video showed defendant standing on the side of the road, wearing a dark sweatshirt, and snow on the ground. The following interaction occurred:

> "THOMPSON: I just came out to see if you needed anything?
>
> DEFENDANT: I just need a ride, man.
>
> THOMPSON: *** What happened with your car then? About how far back is it?
>
> DEFENDANT: A couple miles.
>
> ***
>
> DEFENDANT: *** I don't know man, I've been walking. *** I'm cold. I'm tired. Going back to my girlfriend's house. If I could just have a ride.
>
> * * *
>
> THOMPSON: How'd you end up in the ditch?

DEFENDANT: Dude, I came around a corner. There was a 'coon [*sic*] that came out.

THOMPSON: Oh, okay. Tried to swerve?

DEFENDANT: Yeah. *** It was slick ***.

\* \* \*

THOMPSON: Where were you coming from then, going to your girlfriend's house?

DEFENDANT: Just walking, dude.

THOMPSON: I'm saying where were you driving from?

DEFENDANT: I'm just walking, man.

\* \* \*

THOMPSON: You said you were driving ***.

Defendant: I'm just walking, dude.

THOMPSON: Ok. You weren't coming from a bar or anything?

Defendant: I've had—I've had a couple drinks tonight, yeah."

Defendant indicated that his car was a couple miles back "completely off the road." Defendant reiterated that he was "just looking for a ride" and that was why he "had [his] thumb out" even though he knew that "wasn't right" he was "just trying to get a ride back into town." The interaction continued:

"THOMPSON: Since this is County's jurisdiction, I'll get you in the car and all that. I'll keep you warm. I just want to wait for [County] to get on scene so we can figure out what we're going to do and then we'll go from there. All right?

4

Defendant: Okay."

This initial interaction lasted approximately four minutes. Thompson indicated that he was going to pat defendant down for weapons before defendant entered the squad car. Defendant consented. Thompson told defendant that he could enter the squad car. Defendant entered.[1]

¶ 8 Defendant testified that he was walking on the side of the road when Thompson pulled up and turned his lights on. Defendant did not feel free to walk away at that time.

¶ 9 On cross-examination, defendant indicated that he was cold and walking alone outside. Defendant asked Thompson for a ride. Thompson asked defendant if he wanted to "go into the car to get out of the cold, at which point [he] did agree because [he] was cold." Defendant consented to a pat-down search prior to entering the squad car.

¶ 10 The circuit court found that Thompson's initial contact with defendant was part of a community caretaking encounter. However, defendant's answers regarding how he "[got] in the ditch, where had he been, had he been drinking, and details about any alleged accident" were suppressed where "the officer was in an investigatory situation" and did not give defendant *Miranda* warnings. The State filed a certificate of impairment and notice of appeal.

¶ 11 II. ANALYSIS

¶ 12 The State argues that the circuit court erred in granting defendant's motion to suppress statements because defendant was not subject to a custodial interrogation while he spoke to an officer on the side of the road that would require the issuance of *Miranda* warnings. We agree.

---

[1]The record does not explicitly indicate what part of the video the court viewed. However, the court clarified that the issue presented for consideration was limited to defendant's statements made outside of the squad car. Therefore, we limited the video summarization and our consideration of the video evidence to interactions prior to defendant entering the squad car. In his responding brief, defendant referenced a comment that Thompson made to defendant after he entered the squad car. For purposes of this appeal, and the narrow issue contemplated by the court, we did not consider this comment as it occurred outside of the scope of evidence presented at the hearing.

¶ 13     We review a circuit court's ruling on a motion to suppress evidence pursuant to a two-part test. *People v. Timmsen*, 2016 IL 118181, ¶ 11. First, we will uphold the court's factual findings unless they are against the manifest weight of the evidence. *Id.* Second, after examining the court's factual findings, we review the court's ultimate legal ruling. *Id.* In doing so, we are free to undertake our own assessment of the facts in relation to the issues and may draw our own conclusions when deciding what relief should be granted. *People v. Little*, 2016 IL App (3d) 130683, ¶ 15. Accordingly, we review the ultimate legal question of whether suppression is warranted *de novo*. *Timmsen*, 2016 IL 118181, ¶ 11.

¶ 14     *Miranda* established a procedural safeguard to secure a defendant's privilege against self-incrimination during a custodial interrogation by requiring that a defendant be warned of his right to remain silent, any statement made may be used as evidence against him, and of his right to an attorney. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Statements obtained from a custodial interrogation are subject to suppression if the person did not receive *Miranda* warnings. *Id.* at 478-79; *People v. Rivera*, 304 Ill. App. 3d 124, 128 (1999). An interrogation is any practice that police should know is reasonably likely to evoke an incriminating response from a suspect. *Rivera*, 304 Ill. App. 3d at 128. A custodial interrogation takes place when police initiate the questioning of a person who has been taken into custody or deprived of his freedom of movement in any significant way. *Miranda*, 384 U.S. at 444.

¶ 15     *Miranda* warnings are not required when the police conduct general on-the-scene questioning as to facts surrounding a crime. *Id.* at 477; *People v. Laspia*, 243 Ill. App. 3d 777, 783 (1993). An officer may stop a person for a limited investigation if he has specific articulable facts and inferences that would lead to a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). When an officer is confronted with suspicious circumstances which might

6

be resolved with a satisfactory explanation from the person questioned, the officer is permitted to make inquiries of an investigative nature without first giving *Miranda* warnings. *People v. Tolefree*, 9 Ill. App. 3d 475, 478 (1972).

¶ 16 Generally, a person who is temporarily detained pursuant to an ordinary traffic stop is not in police custody for *Miranda* purposes due to the "noncoercive aspect of ordinary traffic stops." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *People v. Briseno*, 343 Ill. App. 3d 953, 958 (2003). However, the safeguards prescribed by *Miranda* will become applicable during a traffic stop as soon as a suspect's freedom of action is curtailed to the same degree as a formal arrest. *Berkemer*, 468 U.S. at 440; *People v. Havlin*, 409 Ill. App. 3d 427, 434 (2011). The temporary detention of an ordinary traffic stop can evolve into a custodial situation, requiring *Miranda* warnings prior to the interrogation of a suspect. *Rivera*, 304 Ill. App. 3d at 129.

¶ 17 The determination of whether a defendant is in custody for *Miranda* purposes requires a court first to examine the circumstances surrounding the interrogation, then to consider whether, given those circumstances, a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave. *People v. Braggs*, 209 Ill. 2d 492, 505-06 (2003). Factors relevant to determine whether police questioning was a custodial interrogation include: (1) the location, time, length, mood, and mode of questioning; (2) the number of police officers present during questioning; (3) the presence or absence of family or friends; (4) indicia of a formal arrest, including a show of weapons or force or physical restraint; and (5) how the individual arrived at the place of interrogation. *People v. Slater*, 228 Ill. 2d 137, 150 (2008).

¶ 18 First, we find that defendant was not in custody when Thompson asked him general questions outside of the squad car. Initially, Thompson acted in a community caretaking function where his motivation was to determine whether defendant needed assistance. See *People v. Laake*,

7

348 Ill. App. 3d 346, 350 (2004) (an individual's initial seizure may be justified under a police officer's community caretaking function). Thompson's testimony is supported by the body camera footage where Thompson asks whether defendant "needed anything." Thompson turned his lights on for the safety of both him and defendant while they stood on the side of the road. See *id.* Thompson offered his squad car for defendant to sit in while they waited for a different police agency to arrive. These actions were reasonable in light of the circumstances that defendant was walking alone on the side of the road, with dark clothing, at night, and not properly dressed for the weather.

¶ 19    Next, we find that Thompson's questions regarding where defendant came from, where he was going, asking to view his driver's license, and general details of the accident did not convert the interaction into a custodial interrogation. In support, we note that Thompson was the only officer present and Thompson did not draw his weapon, handcuff, or otherwise physically restrain defendant. In light of these facts, we conclude that a reasonable person, who was innocent of any crime, would have believed that he could terminate the encounter and leave. See *Slater*, 228 Ill. 2d at 150; *Berkemer*, 468 U.S. at 440 (general on-the-scene questioning as to facts surrounding a crime does not require *Miranda* warnings because it is a temporary detention of a "nonthreatening character" that does not rise to the level of formal custody).

¶ 20    We note that at some point following his initial interaction with Thompson, defendant was placed into custody. However, we were tasked with determining the limited question of whether defendant had been in custody, for purposes of *Miranda*, prior to him entering Thompson's squad car. *Supra* ¶¶ 19-20. As defendant was not subject to a custodial interrogation at that point, we reverse the circuit court's order granting defendant's motion to suppress statements. We take no position regarding at what point following this initial interaction defendant was placed in custody.

¶ 21                                    III. CONCLUSION

¶ 22        The judgment of the circuit court of Henry County is reversed and remanded.

¶ 23        Reversed and remanded.

¶ 24        JUSTICE McDADE, dissenting:

¶ 25        For the reasons that follow, I believe the decision of the trial court granting defendant's motion to suppress was correct and should be affirmed. I respectfully dissent from the majority's contrary finding that it was error.

¶ 26        The majority finds that Bevans was not subject to custodial interrogation at the relevant time and that no *Miranda* warnings were required. This conclusion is inconsistent with the evidence presented to the trial court at the suppression hearing and is therefore incorrect.

¶ 27        Officer Thompson did not just happen upon Bevans in the course of his patrolling, and he did not just "[come] out to see if you needed anything," as he indicated. He had been dispatched to the area following a report that there had been a vehicle accident and an individual had been seen leaving the scene. When located by Thompson, Bevans was dressed in a sweatshirt and was not wearing a coat, despite the snow, ice, and cold. As shown by his own words, taken from his body camera video, Thompson knew, while standing outside the police car, that Bevans had been driving a car, that something had happened while he was driving, that the car had "end[ed] up in the ditch," that Bevans smelled strongly of alcohol and his speech was slow and slurred, and that Bevans "had a couple of drinks tonight." He had that last information because it was Bevans's direct response when Thompson asked "[y]ou weren't coming from a bar or anything?"—a question he knew or should have known could reasonably produce an incriminating answer.

¶ 28        At the hearing, Thompson testified about the discussion outside the police car—the discussion relevant to the motion to suppress—confirming that at that time Bevans was the subject

9

of an investigation because he might have been driving the car involved in the accident. Although he further testified that it was after Bevans was in the squad car that he *conveyed* to him that he was not free to go, his determination that he could not leave had to have been reached outside the car because nothing about the situation had changed between the discussion outside the car and Bevans's presence inside. Thompson testified that he observed the odor of an alcoholic beverage coming from the backseat of the squad car after Bevans entered it, but this was the same odor Thompson had observed outside. There was no testimony that Bevans drank anything while entering the car. The odor was in the car because he was.

¶ 29     Bevans was effectively in custody outside of the car and he was entitled to *Miranda* warnings at that time. Thompson did not provide those warnings, and Bevans made at least one incriminating statement in response to Thompson's questions. The motion to suppress those statement(s) was properly granted by the circuit court judge. His judgment should be affirmed.