No. 3–09–0939

Opinion filed April 18, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Tazewell County, Illinois, |
| | ) | |
| v. | ) | No. 09–CF–422 |
| | ) | |
| ALLAN MICHAEL HAVLIN, | ) | Honorable |
| | ) | Richard E. Grawey, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

**OPINION**

On August 27, 2009, a Tazewell County grand jury issued a bill of indictment charging defendant with the offense of unlawful possession of a controlled substance. On November 5, 2009, the trial court granted defendant's motion to suppress statements. On November 18, 2009, the State filed a certificate of impairment. We reverse.

FACTS

A Tazewell County grand jury issued a bill of indictment which alleged that defendant committed the offense of unlawful possession of a controlled substance by possessing a substance

containing diazepam, a controlled substance, on July 4, 2009, in violation of section 402(c) of the Illinois Controlled Substances Act (720 ILCS 570/402(c) (West 2008)). Defendant filed a motion to suppress which sought to exclude all confessions, statements, and admissions made by defendant prior to, at the time of, or subsequent to his arrest in this case.

In the motion, defendant claimed that he was not advised of his right to remain silent, right to consult an attorney, right to have an attorney present during questioning, or that anything he said could be used against him at any time. Further, the motion claimed that defendant did not waive his rights and that any statements, confessions or admissions resulted from a violation of his constitutional rights.

On November 5, 2009, the trial court conducted a hearing on defendant's motion to suppress statements. The State called David Horn, an East Peoria police officer, who testified that on July 4, 2009, he conducted a traffic stop on a motor vehicle after observing the vehicle had a license plate that was obstructed from view by a trailer hitch. Horn said that the vehicle contained three persons, including defendant.

Horn told the court that when he approached the vehicle, he asked the driver, Leroy Gibbs, for his license and proof of insurance. He also asked defendant and the other passenger for identification. Horn indicated that he received these documents. When asked by defense counsel what Horn did with defendant's driver's license, Horn replied, "I can't recall." When asked if he gave the driver's license back to defendant, Horn stated, "I generally give them back, yes, but I can't say a hundred percent." Then, Horn testified that he was unsure whether defendant provided him with a driver's license or just verbally provided his name and date of birth. Horn said that he checked for warrants on the subjects in the vehicle.

After gathering this information, he returned to the vehicle and gave the driver a verbal warning. When asked what he said to the driver, Horn testified, "I can't tell you my exact words but I can tell you, you know, basically your trailer hitch is blocking the view of your plate. You need to get that corrected. I'm going to give you a verbal warning for that." The officer then immediately asked "if they had a moment, you know, to, if I could talk to them."

According to Horn, the driver told him "yes." Horn asked Gibbs if there was anything illegal in the vehicle, and Gibbs told him "no." The officer asked for and received the driver's consent to search the vehicle. Before searching the vehicle, he "got each person out" and "asked them for consent to search their person." He took the driver to the rear of the vehicle and searched his person. Horn said that he then asked defendant for consent to search his person. After defendant consented, Horn had defendant place his hands behind his back with his fingers interlocked and grabbed defendant's thumbs while he searched defendant. Horn explained that he does this for his safety because the person cannot move his hands or arms. After finding nothing illegal on defendant's person, he asked defendant to step to the rear of the subject's motor vehicle and the front of his squad car with the other officer, Officer Agee, while he searched the second passenger, VanDyke. After finding no contraband on any of the individuals, Horn testified that he "asked them if they'd mind standing with the other officer who was in front of my squad car."

Horn testified that he asked the individuals to stand by the other officer based on safety considerations because they were on the side of the road. According to Horn, he had not placed anyone under arrest at this time. He searched the car while the individuals stood with the other officer. Further, he had not handcuffed any of the subjects and denied showing any force or indication to the subjects that they were going to be placed under arrest.

3

When asked if the subjects were free to leave, Horn said that if "they had asked to leave, they could [have]" and that he "had no reason to detain them at that point." However, Horn also testified that if one of the subjects had run or started running away, he would "have r[u]n up to see why he was running."

During his search, he found a glass pipe in the driver's door and Chore Boy in the driver's seat. He explained that Chore Boy is a bronze mesh used as a filter for smoking cannabis in the glass pipe. Horn said the pipe smelled of cannabis. Inside the glove box compartment, Horn found a "baggie of pills." Based upon the packaging, Horn believed that someone "probably didn't have a prescription for it."

After completing the search, he approached the three individuals, who were "[s]tanding between the two squad cars or between the rear of their vehicle and the front of [his] squad car and the guardrail." He testified that "[a]t that point I'm conducting an investigation so I would have wanted to ask them questions," but explained that if "they'd asked to leave, they were free to go." According to Horn, he showed "them what I have and I ask them who it belongs to." Horn said that he did not direct his question to one particular person.

Defendant admitted the pills were Valium and belonged to him. Consequently, Horn handcuffed defendant and advised him that he was under arrest for possession of a controlled substance. Gibbs admitted that the glass pipe and Chore Boy belonged to him. After Horn arrested Gibbs and defendant, he allowed VanDyke, the second passenger, to leave.

On cross-examination, Horn testified that he did not read defendant his *Miranda* warnings during the encounter. Horn estimated that 10 or 15 minutes elapsed after he stopped the vehicle. Later in his testimony, Horn indicated the whole incident, including finding the pills in the glove

4

box, lasted "maybe closer to 20 minutes."

Horn stated that he stopped the motor vehicle on the entrance ramp to the Cedar Street Bridge. Horn utilized his flashing lights on the marked squad car to stop the vehicle and that the lights remained on during the entire length of his interaction with defendant. Horn believed that Officer Agee arrived shortly after the stop and before he removed the subjects from the car. According to Horn, Agee parked his marked squad car, with lights activated, behind his squad car.

The court inquired about Horn's comment of asking consent to search motor vehicles. The court asked if it was based upon any objective evidence. Horn indicated that it was random and estimated that he asked for consent to search "[m]aybe a third" of the time. The prosecutor indicated that she did not have any other witnesses.

Defense counsel called Robert VanDyke to testify. VanDyke testified that he was currently in the custody of the Peoria County jail serving a sentence for driving while his license was revoked. He acknowledged being previously convicted of the felony offenses of unlawful possession of a controlled substance and unlawful possession of cannabis in 2004 and 2005. VanDyke said that he thought he had a felony for "impersonating a police officer" but could not remember.

At approximately 2 a.m. on July 4, 2009, he recalled being in a truck with Leroy Gibbs and defendant. He explained that Gibbs drove while he sat in the middle of the front seat, and defendant sat in the passenger seat. VanDyke recalled the vehicle being stopped by an East Peoria police officer. Further, he recalled the officer asking for consent to search his person. After the officer searched him, the officer told him to stand by the other police officer at the

5

scene. VanDyke acknowledged that all three of them, himself, defendant and Gibbs, were searched by the officer and then told to stand next to the other police officer. While they stood next to one officer, VanDyke stated the officer searched the interior of the vehicle. When asked if he felt free to leave at this time, he stated, "No. I was under [the] officer's authority to stand on the side of the road." He did not know how much time passed between the time of the stop and the time defendant was handcuffed, but he did recall it sprinkled and that he stood in the rain while the officer searched the vehicle. Later, he testified that he believed "probably half an hour" or "probably quite some time" passed, but again, he was not certain. He told the court that enough time passed for him to get "damp."

On cross-examination, VanDyke agreed that the officer did not threaten them and did not show any signs of physical force. VanDyke also agreed that the officer walked up to the three of them and showed the three of them a glass pipe and a bag of pills. VanDyke said that the officer did not specifically ask defendant if the pills belonged to him but instead asked a general question. VanDyke recalled the officer saying the following: "He asked, he said he had found a baggie with some pills in it and a glass pipe under the mat and he asked us whose they were, you know." VanDyke said that Gibbs claimed the glass pipe, and defendant said the pills belonged to him, stating the pills were Valium. When the officer approached them with the contraband, VanDyke testified the officer had not told them that they were under arrest, and they were not handcuffed. When asked by the prosecutor if the officer ever told them that they were not free to leave, he testified, "No."

VanDyke testified that when the officer first walked to the vehicle after the traffic stop, the officer asked if there was anything illegal in the vehicle "because he knew who I was and with

my prior background he came to my side and asked me that first." VanDyke explained that he told the officer he did not have anything in the car and did not know of anything illegal being in the car. VanDyke said that after the others were arrested, he was allowed to call a cab, which picked him up from the scene.

Defense did not offer any other evidence, and the court heard arguments. The prosecutor argued that in order to grant the motion, the court must find that "there was custody plus interrogation." The prosecutor stated that at the time of questioning defendant was not under arrest. In response to the court's question, the prosecutor argued if defendant and the others had "tried to leave, they could have." Further, she argued that the officer's general question did not amount to interrogation and that it constituted a proper investigation.

Defense counsel said that a reasonable person in defendant's circumstances would have believed that he was not free to leave. Therefore, defendant was in custody, and it was undisputed that the officer did not advise defendant of his *Miranda* rights.

The court said it agreed. Defense counsel then argued that after the police officer found the contraband, he then asked for an incriminating statemen,t which qualified as an interrogation. Therefore, defense counsel asked the court to grant defendant's motion to suppress.

The court said that it agreed with defense counsel's logic and the analysis of the law. Accordingly, the court granted defendant's motion to suppress and suppressed defendant's statements. On November 5, 2009, the trial court entered a written order stating that after considering the evidence and arguments regarding defendant's motion to suppress, the trial court granted the motion and suppressed all of defendant's statements. The trial court continued the cause for further pretrial on December 4, 2009.

7

On November 18, 2009, the State filed a certificate of impairment with the trial court. On that same day, the State filed a notice of appeal challenging the trial court's granting of defendant's motion to suppress.

ANALYSIS

The State argues that the trial court erroneously granted defendant's motion to suppress statements. First, the State argues that at the time of questioning, defendant was not seized as the traffic stop had concluded and, therefore, *Miranda* warnings were not necessary during a consensual encounter with law enforcement. Alternatively, the State argues that the questioning of defense counsel during the hearing on the motion to suppress contained an "implicit" theory that the traffic stop was unduly prolonged. Responding to this implicit theory on appeal, the State asserts that the search of the vehicle did not unduly prolong the traffic stop, that defendant was not in custody, and that the officer's general questions during the traffic stop did not constitute interrogation requiring *Miranda* warnings. Defendant responds that the trial court correctly granted defendant's motion to suppress because defendant was not free to leave, was not advised of his *Miranda* rights, and was questioned by law enforcement in order to elicit incriminating statements from defendant.

It is well established that "[w]here a defendant challenges the admissibility of a confession through a motion to suppress, the State bears the burden of proving the confession was voluntary by a preponderance of the evidence." *People v. Slater*, 228 Ill. 2d 137, 149 (2008). "[F]indings of fact and credibility determinations made by the trial court are accorded great deference and will be reversed only if they are against the manifest weight of the evidence." *People v. Slater*, 228 Ill. 2d at 149. However, we review *de novo* "the ultimate question posed by the legal challenge to

8

the trial court's ruling on a suppression motion." *People v. Slater*, 228 Ill. 2d at 149.

Here, we agree that defendant, a passenger, was seized for fourth amendment purposes when the vehicle in which he was riding was subjected to a traffic stop and remained seized throughout the duration of the traffic stop. *People v. Harris*, 228 Ill. 2d 222, 231 (2008) (citing *People v. Bunch,* 207 Ill. 2d 7, 13 (2003)). The United States Supreme Court has observed that the fifth amendment has an " 'intimate relation' " with the fourth amendment. *Brown v. Illinois*, 422 U.S. 590, 601-02 (1975) (quoting *Boyd v. United States*, 116 U.S. 616, 633 (1886)). Consequently, the State's brief goes beyond the fifth amendment concerns raised in defendant's motion to suppress by including a discussion of other equally significant fourth amendment considerations.

However, defendant's motion to suppress statements presented to the trial court in this case focused only upon the lack of *Miranda* warnings in violation of his fifth amendment constitutional rights. This is the issue the trial court was asked to consider by defendant's motion to suppress. It is important to note that defendant did not seek to suppress the evidence found by challenging the duration of the traffic stop or by arguing that a second seizure occurred after the officer gave the driver a verbal warning for an obstructed license plate. Thus, we respectfully decline to decide this appeal based on fourth amendment considerations, which the trial court did not have an opportunity to address.

The trial court found defendant was in custody and being interrogated when defendant verbally indicated that the pills found in the glove box belonged to him. Since the officer admitted he did not read defendant his *Miranda* warnings prior to defendant's incriminating statement, the trial court suppressed the statements.

The determination of whether a defendant is in custody for *Miranda* purpose involves two inquiries: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave? *People v. Jeffers*, 365 Ill. App. 3d 422 (2006). When examining the circumstances surrounding the interrogation, courts should consider the following factors: the location, time, length, mood, and mode of the interrogation; the number of police officers present; the presence or absence of the family and friends of the accused; any indicia of formal arrest; and the age, intelligence and mental makeup of the accused. *People v. Braggs*, 209 Ill. 2d 492, 506 (2003). Additionally, the mere fact that an accused is not free to leave during a traffic stop or an investigation does not mean that a defendant is in custody for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984).

In this case, defendant was not placed in a locked squad car, was not handcuffed and was not told that he was under arrest prior to making the incriminating statement. The occupants of the car were not transported to the police station, separately placed into interrogation rooms by the officers, and questioned. At the scene of the traffic stop, and during the encounter, neither officer displayed weapons or physically restrained the occupants by force. Defendant had not been separated from his companions when the officer directed the general question, "Whose pills are these?" to the vehicle's occupants. See *People v. Fasse*, 174 Ill. App. 3d 457 (1988). The flashing lights on the squad cars were necessary to insure the safety of the persons and vehicles stopped on the side of the road and those traveling on the roadway at 2 a.m. that morning. Moreover, the officers had not issued a traffic citation for a serious driving offense and had only provided a verbal warning to the driver for a minor infraction. The record suggests that although

10

two officers were present at the scene, the mood at the scene of the traffic stop was serious but not oppressive.

*Miranda* warnings are not required where the police conduct a general on-the-scene investigation as to the facts surrounding a crime or other general questioning. *People v. Laspisa*, 243 Ill. App. 3d 777, 783 (1993) (citing *Miranda v. Arizona,* 384 U.S. 436, 477-78 (1966)). See *Berkemer v. McCarty*, 468 U.S. 420 (1984). The case law provides that the protections of *Miranda* result from the combined circumstances of both custody and interrogation. "Absent the interplay of custody and interrogation, an individual's privilege against self-incrimination is not threatened." *People v. Villalobos*, 193 Ill. 2d 229, 239 (2000) (citing *Illinois v. Perkins,* 496 U.S. 292, 297 (1990)). Based on the circumstances present in this case, we conclude defendant was not in custody when the officer asked a question regarding the contraband located in the motor vehicle. Therefore, we also conclude *Miranda* warnings were not required before defendant responded to the officer's general question regarding the ownership of the pills.

For these reasons, we reverse the trial court's decision granting defendant's motion to suppress statements based upon a violation of defendant's fifth amendment rights. We do not reach the issue of whether defendant's fourth amendment rights were violated because the traffic stop itself was unduly prolonged because defendant did not request the trial court to make this determination. The cause is remanded to the trial court for further proceedings.

CONCLUSION

The judgment of the circuit court of Tazewell County is reversed.

Reversed and remanded.

11