# Illinois Official Reports

## Appellate Court

---

### *People v. Garza*, 2018 IL App (3d) 170525

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANTHONY GARZA, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0525 |
| Filed | December 6, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 15-CF-377; the Hon. Stanley B. Steines, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Terry A. Costello, State's Attorney, of Morrison (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>No brief filed for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justice Holdridge concurred in the judgment and opinion.<br>Justice Schmidt concurred in part and dissented in part, with opinion. |

¶ 1    Following the circuit court's grant of defendant Anthony Garza's motion to suppress evidence, the State filed a certificate of substantial impairment and notice of appeal. The State argues the court erred in granting defendant's motion to suppress. We affirm.

¶ 2                                        I. BACKGROUND

¶ 3    The State charged defendant, by information, with one count each of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2014)), unlawful possession of cannabis (720 ILCS 550/4(d) (West 2014)), and possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2014)). Defendant retained private counsel, who filed a motion to suppress defendant's confession. 725 ILCS 5/114-11 (West 2016). The motion alleged that defendant made an incriminating statement during a custodial interrogation without being advised of his *Miranda* rights. As a result, defendant sought suppression of the statements that he had made in response to the police questioning.

¶ 4    At the hearing on defendant's motion, Rock Falls police officer Scott Allspaugh testified that on November 20, 2015, at 10:57 a.m., he initiated a traffic stop on a red minivan for driving over the posted speed limit. At the time, the weather was clear. The minivan stopped in the East Coloma school parking lot. Upon approach, Allspaugh observed five individuals seated in the minivan and radioed for a backup officer due to officer's safety concerns. Approximately five minutes after he initiated the stop, Officer Greyson Scott arrived. Before Scott arrived, Allspaugh retrieved the driver's information and began preparing a citation for speeding.

¶ 5    When Scott arrived, Allspaugh transferred the citation preparation duties to Scott and conducted a free-air sniff with his canine unit. Approximately 10 minutes into the stop, the canine alerted to the presence of narcotics at the rear of the minivan. Allspaugh radioed for additional backup officers and directed the occupants to exit the minivan. Allspaugh and Scott searched each of the occupants as they exited the vehicle. The officers did not ask for consent to search. Allspaugh said the scope of the search was more than a pat-down and included searching inside the occupants' pockets, waistbands, hats, socks, and shoes. Allspaugh also asked each occupant for identification and radioed dispatch to conduct a warrant check. None of the occupants possessed contraband on their person or were the subject of an arrest warrant. After this search, Allspaugh directed the five occupants to move to an area near his patrol vehicle. Two uniformed police officers watched the occupants while Allspaugh and Scott conducted a search of the interior of the minivan. None of the occupants were under arrest at this time, the officers did not tell the occupants that they could not leave, none of the occupants were in handcuffs, the officers did not separate the occupants, and the officers did not display their weapons.

¶ 6    During the vehicle search, Allspaugh found a backpack in the trunk area. Inside of the backpack, Allspaugh saw what appeared to be illicit substances and pipes used to consume narcotics. Postarrest analysis indicated that the backpack contained 13.8 grams of marijuana and 1.8 grams of cocaine. Following his discovery, Allspaugh removed the suspected contraband from the backpack, concluded the search of the minivan, and approached the occupants. Allspaugh asked the occupants who owned the backpack. At the time, none of the occupants had received *Miranda* warnings and at least two additional plain clothed police

detectives had arrived at the scene for a total police presence of six officers. In response to Allspaugh's question, defendant indicated that he owned the backpack. Allspaugh placed defendant in handcuffs and then asked defendant "what that white powder substance was." Defendant said the powder was cocaine.

¶ 7 In the court's ruling, it initially noted that once "somebody is in custody for *Miranda* purposes that any questioning is prohibited or any statements in response to questioning is subject to suppression." The court then focused its ruling on whether defendant was in custody at the time Allspaugh asked about the ownership of the backpack and the white substance. The court found that when Allspaugh asked about the ownership of the backpack, six officers were on the scene. Four of the officers were in full uniform, and two of the officers were dressed in plain clothes with their badges visible. Each officer's firearm was visible during their encounter with defendant. At the time of Allspaugh's questions, defendant did not know that Allspaugh had discovered contraband. The court found an officer told defendant to exit the minivan, the officer conducted a search upon defendant's exiting the vehicle that was more like a search subsequent to arrest than a *Terry* stop pat-down, and the officer directed defendant to a location away from the minivan. The court further found that the restraint imposed upon defendant was comparable to a formal arrest. The court concluded that "not only would a reasonable person believe they were not free to leave, I also find that there—that the restraint imposed upon the subjects were comparable to those associated with a formal arrest." The court granted defendant's motion to suppress defendant's answers to the questions "whose bag is this?" and "what is this white powder?"

¶ 8 Following the court's grant of defendant's motion, the State filed a certificate of substantial impairment and a notice of appeal. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017).

¶ 9 II. ANALYSIS

¶ 10 The State argues that the circuit court erred in granting defendant's motion to suppress statements because defendant was not subject to a custodial interrogation that would require the issuance of *Miranda* warnings. We disagree and find the court did not err as defendant was in custody and was asked two interrogatory questions without prior *Miranda* warnings.

¶ 11 At the outset, we note that defendant did not file a responsive brief. However, we elect to decide the case in the absence of an appellee's brief because "the record is simple and the claimed errors are such that [we] can easily decide them without the aid of an appellee's brief." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); see also *People v. Cosby*, 231 Ill. 2d 262, 285 (2008) (applying *Talandis* in the context of a review of a motion to suppress evidence).

¶ 12 In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court prescribed a set of prophylactic warnings that a police officer must provide to a suspect before conducting a "custodial interrogation." These warnings are intended to protect a suspect's fifth amendment right against self-incrimination. *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). *Miranda* was motivated by concerns "that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980) (quoting *Miranda*, 384 U.S. at 457-58). The *Miranda* warnings assure that any inculpatory statement made by an individual held in custody is not simply the product of " 'the compulsion inherent in

custodial surroundings.' " *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (quoting *Miranda*, 384 U.S. at 458). *Miranda* further holds that where an individual is subject to a custodial interrogation without the benefit of the prescribed warnings, the prosecution may not use that individual's inculpatory or exculpatory statements at trial. *Miranda*, 384 U.S. at 492.

¶ 13    "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. It consists of two elements: (1) whether an individual was subject to interrogation and (2) whether the interrogation occurred in a custodial situation. *People v. Tayborn*, 2016 IL App (3d) 130594, ¶¶ 18-19.

¶ 14    First, we find that Allspaugh's first question—"Whose backpack is this?"—called for an incriminating response because Allspaugh knew that the backpack contained illicit substances and drug paraphernalia. See *id.* ¶ 18 ("[a]n interrogation is any practice that police should know is reasonably likely to evoke an incriminating response from a suspect"). Therefore, Allspaugh's first question, about the ownership of the backpack, was interrogatory. Second, we find that Allspaugh's question about the white powder substance found inside the backpack also was interrogatory. This question also called for an incriminating response—an identification of the contraband that Allspaugh believed to be narcotics. Therefore, both of Allspaugh's questions were interrogatory, and we next must determine whether defendant was in custody at the time that Allspaugh posed these questions.

¶ 15    In reaching the above conclusion, we note that our opinion is not intended to limit the ability of the police to pose sufficiently general questions. With regard to these "[g]eneral, on-the-scene" questions, *Miranda* explains:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime. [Citation.] When an individual is in custody on probable cause, the police may, of course, seek out evidence *in the field* to be used at trial against him. Such investigation may include inquiry of *persons not under restraint*. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (Emphases added.) *Miranda*, 384 U.S. at 477-78.

This explanation contemplates that the "[g]eneral on-the-scene questioning" exception will apply only when police pose general questions in a noncustodial environment to nonsuspects regarding the facts that surround a crime. *Id.* at 477. By using phrases like "in the field" and "persons not under restraint," the Supreme Court indicates that this exception truly only applies to circumstances where the interviewed individual is subject to few, if any, indication of formal custody. *Id.* In these noncustodial circumstances, the citizen-witnesses do not need the protections of the *Miranda* warnings because they are (1) not subject to the compelling pressures of police custody, (2) not suspects with a fifth amendment privilege against self-incrimination, and (3) providing general information about the "facts surrounding a crime." *Id.* This *Miranda* exception is almost expressly directed at scenarios where police officers openly speak with unrestrained bystanders who witnessed a crime. This exception

does not apply in the instant case because defendant was subject to the compelling pressures of police custody (*infra* ¶ 18), Allspaugh had reason to suspect that defendant had committed a narcotics offense, and Allspaugh's question sought an incriminating statement from defendant that established the *actus reus* of the crime, instead of the generic facts surrounding the crime.

¶ 16 The determination of whether defendant was "in custody" for purposes o*f Miranda* includes two discrete inquiries: (1) what were the circumstances surrounding the interrogation? and (2) given those circumstances, would a reasonable person have felt that he was not at liberty to terminate the interrogation and leave? *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The custody inquiry is an objective test. *Alvarado*, 541 U.S. at 667. The following factors are determinative of whether a suspect was in a custodial setting: the location, time, length, mood, and mode of interrogation; the number of police officers present; the presence or absence of the family and friends of the accused; any indication of formal arrest; and the age, intelligence, and mental makeup of the accused. *People v. Havlin*, 409 Ill. App. 3d 427, 434 (2011).

¶ 17 The record sets forth the following circumstances surrounding interrogatory questions: the instant case began as a traffic stop for a speeding violation. Typically, this type of stop does not require *Miranda* warnings because it is a temporary detention of a "nonthreatening character" that does not rise to the level of formal custody. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). However, the investigation deviated from its traffic stop origin when Allspaugh's canine alerted to the presence of narcotics in the minivan that defendant was a passenger. At this point, the "nonthreatening character" of the stop began to dissipate, and the stop started to evolve into a custodial situation. See, *e.g.*, *People v. Jordan*, 2011 IL App (4th) 100629 (traffic stop for a seatbelt violation transformed into a drug search and custodial interrogation where the passenger was locked in a squad car, isolated from the driver, and was told police intended to send for a drug-detection canine); *People v. Rivera*, 304 Ill. App. 3d 124, 129 (1999) (purpose of on-the-scene investigatory stop ended when a bag of suspected cocaine was removed from defendant's vehicle and the officers' reasonable suspicion of criminal activity developed into probable cause of defendant's involvement in cocaine delivery). Allspaugh directed the vehicle occupants to exit the minivan, asked the occupants for identification, radioed dispatch to conduct a warrant check on each of the occupants, and subjected the occupants to a thorough search. According to Allspaugh, the search was more than a pat-down and included searching inside the occupant's pockets, waistbands, hats, socks, and shoes. Following the search, Allspaugh directed the five occupants to stand in an area near his patrol vehicle. Allspaugh never told the occupants that they could or could not leave or that they were under arrest. Two uniformed police officers watched the occupants while Allspaugh and Scott searched the minivan. During the vehicle search, two additional police officers arrived at the scene for a total police presence of six officers. During the vehicle search, Allspaugh discovered a backpack that contained an illicit substance and drug paraphernalia. Allspaugh then concluded the vehicle search and asked the group of occupants, as a whole, who owned the backpack.

¶ 18 We find that these circumstances would cause a reasonable person to feel that he was not at liberty to terminate the interrogation and leave the scene. *Thompson*, 516 U.S. at 112. At the time of Allspaugh's question, defendant and the other occupants had been subjected to several exercises of police authority that evidenced a growing custodial atmosphere. First,

Allspaugh directed all of the vehicle occupants to exit the minivan and then conducted a thorough search of each occupant. This search was akin to a search incident to arrest as it exceeded the scope of a search for weapons and appeared to search for evidence of a criminal offense. See *People v. Flowers*, 179 Ill. 2d 257, 263 (1997) (purpose of a pat-down search is to protect the officer and others in the vicinity, not to gather evidence) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)); *cf. Arizona v. Gant*, 556 U.S. 332, 338 (2009) (search incident to arrest exception to the warrant requirement derives from interests in officer safety *and evidence preservation* that are implicated in arrest situations). While the validity of this search is not at issue, the search itself evidenced a growing custodial atmosphere. Second, Allspaugh directed the five occupants to move away from their minivan and stand near his police vehicle where two uniformed officers watched over them. Thereafter, the police presence grew to outnumber the occupants as two additional officers arrived on the scene for a total of six officers and five occupants. Although none of the officers told the occupants that they were not free to leave, their overwhelming presence would cause a reasonable person to question their ability to merely walk away without permission. Moreover, the occupants' departure from the scene was rendered impractical by the lack of access to their vehicle. Together, these circumstances established the type of coercive custodial environment that *Miranda* is intended to address. A reasonable person, in these circumstances, would not have felt at liberty to terminate the interrogation and leave. Therefore, defendant was in custody when Allspaugh asked who owned the backpack. Further, when Allspaugh asked the second question, about the white powder substance, the custodial environment was even more apparent as defendant was then in handcuffs. Therefore, we conclude that the circuit court did not err when it suppressed defendant's custodial and un-*Mirandized* statements.

¶ 19    In reaching our conclusion, we find that *Havlin*, 409 Ill. App. 3d 427, the case relied on by the State, is distinct from the instant case. In *Havlin*, Officer David Horn stopped the vehicle that Allan Havlin was a passenger in for a traffic infraction. *Id.* at 429. After Horn gave the driver of the vehicle a written warning, he asked if the occupants would speak with him. The driver of the vehicle replied "yes." *Id.* Horn then asked and received consent to search the vehicle. Before conducting the vehicle search, Horn " 'got each person out' " and " ' asked them for consent to search their person.' " *Id.* Horn explained that he conducted this search for the officer's safety. Following the search of each occupant, Horn asked the occupants to stand in front of his squad car by a second officer. *Id.* at 430. Horn asked the occupants to move near the other officer due to the officer's safety concerns. Horn denied using any show of force or indication of arrest. Horn said that if the occupants had asked to leave, he would have allowed them to leave and they were not detained at this point. During the vehicle search, Horn found a glass pipe, drug paraphernalia, and a bag of pills. After Horn completed the search, he approached the three occupants and asked to whom the items belonged. Defendant said the pills were Valium and they belonged to him. *Id.* The circuit court suppressed defendant's statement, finding defendant was subject to a custodial interrogation. *Id.* at 432. On appeal, this court found the circuit court's ruling to be erroneous because the circumstances indicated that defendant was not in custody at the time of Horn's question. *Id.* at 435. In support of our ruling, we noted that defendant was not handcuffed or placed in a locked squad car, Horn had not told defendant that he was under arrest, and Horn had not separated the occupants before he posed the question. *Id.* at 434.

¶ 20 The instant case differs from *Havlin* in two major respects. First, there is no express indication that Allspaugh's initial pat-down was motivated by the officer's safety concern. Unlike Horn, Allspaugh did not testify as to his motivation for the search of each occupant as they exited the vehicle. The record indicates that, based on the depth of the search, Allspaugh sought evidence of illicit drugs and was not simply conducting a patdown for officer's safety. See *Flowers*, 179 Ill. 2d at 263. As a result, Allspaugh's search resembled a search incident to arrest and carried strong implications of police custody. *Supra* ¶ 18. Second, the police presence in the instant case was far greater than that in *Havlin*. Here, the number of officers at the scene exceeded the number of occupants. *Cf. Havlin*, 409 Ill. App. 3d at 434 (two officers were present at the scene). The imposing presence of six officers for five occupants created a greater environment of police custody. Thus, in contrast to *Havlin*, the facts of the instant case established that defendant was subject to a custodial interrogation without *Miranda* warnings, and the court did not err in granting defendant's motion to suppress.

¶ 21 III. CONCLUSION

¶ 22 The judgment of the circuit court of Whiteside County is affirmed.

¶ 23 Affirmed.

¶ 24 JUSTICE SCHMIDT, concurring in part and dissenting in part:

¶ 25 I agree with the majority that the trial court correctly suppressed defendant's response to the officer's second question: "What is this white powder?" I dissent with respect to the majority's ruling regarding the question: "Whose bag is this?" I would reverse the trial court on that question and answer.

¶ 26 At the time of the officer's first question, defendant was not in custody for *Miranda* purposes. The mere fact that an accused is not free to leave during a traffic stop or an investigation does not, *ipso facto*, render defendant in custody for *Miranda* purposes. See *Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984). While I agree that defendant was seized for fourth amendment purposes when the vehicle was stopped and police conducted their investigation, the general question as to ownership posed to the group did not constitute interrogation. See, *e.g.*, *People v. Laspisa*, 243 Ill. App. 3d 777, 783 (1993); *People v. Havlin*, 409 Ill. App. 3d 427, 435 (2011).

¶ 27 A general question posed to a group of people does not create "the compulsion inherent in custodial surroundings." (Internal quotation marks omitted.) *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004).