THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARIA C. PEO, Defendant-Appellee.

Second District   No. 2—06—0481

Opinion filed May 20, 2009.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

The State appeals from an order of the circuit court of Du Page County granting the motion of defendant, Maria C. Peo, to suppress an incriminating statement that she made after she was arrested for unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2004)) but before she was given warnings under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). On appeal, the State argues that the statement is admissible because it was volunteered or, alternatively, because it falls under the "rescue doctrine" exception to *Miranda*. We reverse and remand.

## I. BACKGROUND

Defendant was charged by complaint on July 5, 2005, with unlawful possession of drug paraphernalia. On October 31, 2005, she moved to suppress a statement that she made after her arrest, on the basis that the police questioned her before advising her of her *Miranda* rights.

A hearing on defendant's motion to suppress took place on January 31, 2006. Officer Bischoff[1] testified as follows. On July 5, 2005, he initiated a traffic stop on a car for failing to signal a turn. Officer Bischoff observed the vehicle's occupants "shuffling around," so he requested backup. The car contained three individuals, with defendant seated in the front passenger seat. After another officer arrived, Officer Bischoff arrested the vehicle's driver for driving on a revoked license. He next removed the passengers, searched the vehicle incident to the arrest, and found three glass smoking pipes. One pipe was in an empty cigarette box in the driver's-side door panel, the second pipe was "smashed between the driver's seat and the center console," and the third pipe was "smashed between the seats and the rear passenger." Officer Bischoff then took defendant and the other passenger into custody; at that point, they were not free to leave.

When Officer Bischoff first removed defendant from the car, she was complaining that she was not feeling well. After he found the pipes and placed her in custody, she continued to complain about feeling sick; defendant was hunching forward and saying " 'my stomach, I'm not feeling well.' " Defendant was "very jittery" and her eyes were "very constricted." Based on his experience, Officer Bischoff thought that she was on drugs. He asked defendant, "What's wrong[?]" She replied, " 'I have been using crack cocaine, prescription medication and been drinking. I think I may be overdosing because my chest and stomach is [*sic*] hurting.' " At this point, Officer Bischoff

---

[1]Officer Bischoff's first name is not present in the record.

had not yet given defendant *Miranda* warnings. In response to defendant's statement, Officer Bischoff called an ambulance, and it transported her to the hospital. He later learned that she was in intensive care.

Defendant testified that, when the car was pulled over by the police, she "was pretty out of it," "felt very sick," and "was very dazed and confused." Defendant thought that there was more than one officer present but did not really remember. She initially testified that she did not "really even remember speaking to the officers" but later testified that she remembered being asked if she was using drugs. Defendant had been using heroin the entire day, and she did not remember exactly what she told the police, but she "just kept telling them that [she] felt sick." The police called an ambulance, which took her to the hospital. She was very ill and was on life support for three days.

On January 31, 2006, the trial court granted defendant's motion to suppress and made the following findings. Officer Bischoff arrested defendant for unlawful possession of drug paraphernalia and observed that she was under the influence of drugs. He had not given defendant *Miranda* warnings before asking what was wrong with her, to which she replied that she might be overdosing because she had been smoking crack cocaine and taking prescription drugs all day long. The trial court stated that Officer Bischoff asked defendant what was wrong with her to support his suspicion that she was under the influence of drugs, and it ruled that his failure to give her *Miranda* warnings required the suppression of defendant's answer.

The State filed a motion to reconsider on March 1, 2006, which the trial court denied on April 21, 2006. The trial court stated that Officer Bischoff did not need to ask defendant what was wrong, because she had previously said that she was not feeling well and that her stomach hurt and the officer was already suspicious that her condition was probably caused by drugs.

The State filed a certificate of impairment, and it appeals the trial court's ruling under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).[2]

## II. ANALYSIS

When reviewing a ruling on a motion to suppress, we accord great deference to the trial court's factual findings and reverse those find-

---

[2]We note that this court held in *People v. Marker*, 382 Ill. App. 3d 464, 477 (2008), that a motion by the State to reconsider an interlocutory order suppressing evidence would not toll the time for filing an appeal under Supreme Court Rules 604(a)(1) and 606(b) (210 Ill. 2d Rs. 604(a)(1), 606(b)). However, this holding was recently reversed by our supreme court. See *People v. Marker*, 233 Ill. 2d 158 (2009). Accordingly, jurisdiction is proper in this case.

ings only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Such deference is based on the recognition that the trial court is in a superior position to determine and weigh the witnesses' credibility, observe their demeanor, and resolve conflicts in their testimony. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). However, we review *de novo* the ultimate ruling on the motion to suppress. *Pitman*, 211 Ill. 2d at 512.

The State first argues that Officer Bischoff was not required to provide defendant with *Miranda* warnings before asking her what was wrong, because his inquiry was a "reflexive and responsive question" to information volunteered by defendant. We begin by examining the constitutional underpinnings of *Miranda*. The fifth amendment to the United States Constitution (U.S. Const., amend. V) and article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §10) provide individuals with a right against self-incrimination. In *Miranda*, the Supreme Court stated that the right against self-incrimination was especially vulnerable in the setting of custodial interrogation of suspects, because such interrogation "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 16 L. Ed. 2d at 719, 86 S. Ct. at 1624. To protect the right against self-incrimination in such situations, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. The "procedural safeguards" referred to by the Supreme Court consist of the now familiar *"Miranda"* warnings that the individual has the right to remain silent, that any statement he makes can be used as evidence against him, that he has the right to an attorney, and that, if he cannot afford an attorney, one will be appointed for him. *Miranda*, 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.

The police need supply *Miranda* warnings only if the defendant is under "custodial interrogation," which means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612. Thus, the defendant must be both (1) in custody (or its equivalent) and (2) under interrogation. In this case, it is undisputed that defendant had been arrested and was in police custody when she made the incriminating statement. Therefore, the issue is whether Officer Bischoff's question, "What's wrong[?]" constitutes interrogation.

■ The Supreme Court further refined its definition of "interrogation" in *Rhode Island v. Innis*, 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). It stated:

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308, 100 S. Ct. at 1689.

This determination is made by focusing "primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308, 100 S. Ct. at 1690.

■ However, under *Miranda*, "[v]olunteered statements of any kind are not barred by the Fifth Amendment" and therefore do not require *Miranda* warnings. *Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630. This is because the "fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630. The Supreme Court stated, by way of example, that the police do not have to stop a person who comes into the police station wishing to confess to a crime or calls the police to confess or make a statement. *Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.

Several courts have expanded on these scenarios and have held that, where a defendant volunteers a statement, a question by police seeking clarification of that statement does not always constitute interrogation. See *United States v. Rommy*, 506 F.3d 108, 134 (2d Cir. 2007) (where the defendant requested a meeting with Drug Enforcement Administration representatives, and the agents asked the defendant only follow-up questions such as the spelling of names or the dates of when events disclosed by the defendant occurred, the agents were not seeking incriminating information beyond that already volunteered by the defendant, so *Miranda* warnings were not necessary); *United States v. Gonzalez*, 121 F.3d 928, 939-40 (5th Cir. 1997) (no interrogation where the officer requested a clarification of the defendant's statement " 'all of that is mine,' " and the defendant replied that he was referring to " 'the coke and the gun' "); *Anderson v. Thieret*, 903 F.2d 526, 532 (7th Cir. 1990) (not interrogation for police to ask " 'Who?' " after the defendant voluntarily stated, " 'I stabbed her' "); *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985) (no interrogation where alleged drug dealer stated, " 'You can't take that,' " when officer was seizing spiral notebook, police asked

" 'Why?' " and suspect stated, " 'I can't run my business without that' "); *Turner v. Sullivan*, 661 F. Supp. 535, 537 (E.D.N.Y. 1987) (where the defendant said, " 'My leg is hurting,' " police officer asked, " 'What happened to you?' " and the defendant responded, " 'I jumped off from the top of the highway,' " no interrogation occurred); *State v. Porter*, 303 N.C. 680, 691, 281 S.E.2d 377, 385 (1981) (where the defendant stated, " 'The bank bag is in the car,' " the officer asked, " 'What bank bag?' " and the defendant responded, " 'The bag from the robbery,' " statement was admissible).

The aforementioned cases employ the overarching reasoning that, because *Miranda* warnings are required only in coercive situations (see *Berkemer v. McCarty*, 468 U.S. 420, 437, 82 L. Ed. 2d 317, 333, 104 S. Ct. 3138, 3148-49 (1984) ("Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated")), *Miranda* concerns are not present when the police seek clarification of information volunteered by the defendant, because such a follow-up question is not inherently coercive.[3] " 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300, 64 L. Ed. 2d at 307, 100 S. Ct. at 1689.

Whether a defendant would have reasonably understood that the police officer was asking a follow-up question only to clarify the defendant's already volunteered statements, rather than to force additional incriminatory disclosures, depends on the facts and circumstances of the particular case. *Rommy*, 506 F.3d at 133. A defendant's answers to follow-up questions should be considered volunteered "only if the questions are neutral efforts to clarify what has already been said rather than apparent attempts to expand the scope of the statement previously made." 2 W. LaFave, J. Israel & N. King, Criminal Procedure §6.7(d), at 566-67 (2d ed. 1999); see also *Rommy*, 506 F.3d at 133-34 (citing quote).

We further note that in *People v. Andersen*, 134 Ill. App. 3d 80, 96-97 (1985), the Illinois Appellate Court generally recognized the aforementioned reasoning when it stated, "Even where a volunteered statement is amplified by the defendant in response to limited follow-up questioning, the courts have in some instances found the resulting admissions to be admissible." As in the companion federal

---

[3]Indeed, *Miranda* itself defines "interrogation" as "questioning *initiated* by law enforcement officers," though it also states that a person must be given *Miranda* warnings "[p]rior to *any* questioning." (Emphases added.) *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.

case, *Anderson*, 903 F.2d 526, the appellate court concluded that after the defendant spontaneously stated, " 'I killed her,' " the officer's clarifying question, " 'Who?' " did not require that the defendant's response of " 'Cathy' " be suppressed, despite the lack of *Miranda* warnings. *Anderson*, 134 Ill. App. 3d at 97-98; see also *People v. Mattison*, 132 Ill. App. 2d 1069, 1070-71 (1971) (where the defendant asked questions of the police officer during his transport to the police department, and the officer made some inquiries of the defendant, the defendant's statement that he had sold some baking soda to " 'two white dudes' " was admissible even absent complete *Miranda* warnings).

■ Here, defendant's statement, "my stomach, I'm not feeling well," was clearly volunteered. Officer Bischoff then asked, "What's wrong[?]" The trial court found that Officer Bischoff was already suspicious that defendant's condition was probably caused by drugs and that he asked this question to support his suspicion.[4] However, the proper inquiry is not what the officer intended but whether, viewed objectively from the suspect's perceptions, the officer's words or actions "are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308, 100 S. Ct. at 1689-90. Furthermore, as discussed, simple questions seeking clarification of volunteered statements do not require *Miranda* warnings. Applying these principles, we conclude that, in a verbal exchange initiated by defendant, Officer Bischoff's question was a neutral, noncoercive response to clarify what defendant had already volunteered, rather than a question reasonably likely to elicit incriminating information outside the scope of her volunteered statement. That incriminating information was actually obtained does not alter our analysis, as the cases cited above all involved statements that the defendants later sought to suppress. Rather, Officer Bischoff's question was a natural, neutral response that logically followed from defendant's volunteered statement, and it did not create the type of coercive situation that *Miranda* is designed to guard against. As Officer Bischoff's question did not constitute interrogation under *Miranda*, defendant's response, "I have been using crack cocaine, prescription medication and been drinking. I think I may be overdosing because my chest and stomach is [*sic*] hurting," should not have been suppressed for the failure to provide *Miranda* warnings.

---

[4]We note that Officer Bischoff did not testify that he asked defendant what was wrong in order to obtain incriminating information. Rather, this was a finding made by the trial court.

822

Based on our conclusion that Officer Bischoff was not required to give defendant *Miranda* warnings before asking her what was wrong, we do not address whether the question would fall under the so-called "rescue doctrine" exception to *Miranda*. See *People v. Laliberte*, 246 Ill. App. 3d 159, 169-71 (1993) (discussing rescue doctrine).

In an unpublished portion of our opinion, we briefly address defendant's argument that her statement regarding drugs was involuntary because she was seriously ill at the time that she spoke.

### III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the Du Page County circuit court, and we remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

ZENOFF, P.J., and JORGENSEN, J., concur.